AO 240 (Rev. 10/03)

E-FILED
Thursday, 16 September, 2004   04:55:33 PM
Clerk, U.S. District Court, ILCD

# UNITED STATES DISTRICT COURT

Central District of Illinois

Plaintiff

V.

Defendant

APPLICATION TO PROCEED
WITHOUT PREPAYMENT OF
FEES AND AFFIDAVIT

CASE NUMBER: _04-1318_

I, _Thomas Berchiolly_, declare that I am the (check appropriate box)

☒ petitioner/plaintiff/movant     ☐ other

in the above-entitled proceeding; that in support of my request to proceed without prepayment of fees or costs under 28 USC §1915 I declare that I am unable to pay the costs of these proceedings and that I am entitled to the relief sought in the complaint/petition/motion.

In support of this application, I answer the following questions under penalty of perjury:

1. Are you currently incarcerated?     ☒ Yes     ☐ No     (If "No," go to Part 2)

   If "Yes," state the place of your incarceration _FCI Pekin, IL. PO Box 5000_

   Are you employed at the institution? _yes_  Do you receive any payment from the institution? _yes_ _About $5.00 A month_

   Attach a ledger sheet from the institution(s) of your incarceration showing at least the past six months' transactions.

2. Are you currently employed?  _N/A_  ☐ Yes     ☐ No

   a. If the answer is "Yes," state the amount of your take-home salary or wages and pay period and give the name and address of your employer.  _N/A_

   b. If the answer is "No," state the date of your last employment, the amount of your take-home salary or wages and pay period and the name and address of your last employer.  _N/A_

3. In the past 12 twelve months have you received any money from any of the following sources?

   a. Business, profession or other self-employment     ☐ Yes     ☒ No
   b. Rent payments, interest or dividends                ☐ Yes     ☒ No
   c. Pensions, annuities or life insurance payments      ☐ Yes     ☒ No
   d. Disability or workers compensation payments         ☐ Yes     ☒ No
   e. Gifts or inheritances                                ☒ Yes     ☐ No
   f. Any other sources                                    ☐ Yes     ☒ No

   If the answer to any of the above is "Yes," describe, on the following page, each source of money and state the amount received and what you expect you will continue to receive.

My family sends me a little money from time to time. There is no guarantee when or how much they will send or if they will send any at all.

4. Do you have any cash or checking or savings accounts?   ☐ Yes   ☒ No

   If "Yes," state the total amount.   N/A

5. Do you own any real estate, stocks, bonds, securities, other financial instruments, automobiles or any other thing of value?   ☐ Yes   ☒ No

   If "Yes," describe the property and state its value.

   N/A

6. List the persons who are dependent on you for support, state your relationship to each person and indicate how much you contribute to their support.

   N/A

I declare under penalty of perjury that the above information is true and correct.

9-14-04                Thomas Birchfield
_____           _____
    Date                  Signature of Applicant


**NOTICE TO PRISONER:** A Prisoner seeking to proceed without prepayment of fees shall submit an affidavit stating all assets. In addition, a prisoner must attach a statement certified by the appropriate institutional officer showing all receipts, expenditures, and balances during the last six months in your institutional accounts. If you have multiple accounts, perhaps because you have been in multiple institutions, attach one certified statement of each account.

## All Transactions



| | | | | |
|---|---|---|---|---|
| Inmate Reg #: | 98369024 | Current Institution: | Pekin FCI | |
| Inmate Name: | BERCHIOLLY, THOMAS | Housing Unit: | ILLINOIS | |
| Report Date: | 09/13/2004 | Living Quarters: | A01-124L | |
| Report Time: | 5:49:34 PM | | | |

| Date/Time | User Id | Transaction Type | Amount | Ref# | Payment# | Balance |
|---|---|---|---|---|---|---|
| 2/4/2004 7:31:44 PM | AMService | ITS Withdrawal | ($4.00) | ITS0204 | | $266.40 |
| 2/3/2004 6:38:28 PM | PEK4059 | Sales | ($43.75) | 62 | | $270.40 |
| 2/3/2004 2:49:29 PM | PEK4019 | Local Collections | $50.00 | 11571 | | $314.15 |
| 2/3/2004 9:18:21 AM | PEK4019 | Payroll - IPP | $11.40 | JV0065 | | $264.15 |
| 2/2/2004 2:30:20 PM | PEK2867 | Local Collections | $50.00 | 11467 | | $252.75 |
| 1/27/2004 5:17:34 PM | PEK1789 | Sales | ($3.20) | 15 | | $202.75 |
| 1/27/2004 5:09:53 PM | PEK1789 | Sales | ($33.65) | 9 | | $205.95 |
| 1/20/2004 6:49:07 PM | PEK4059 | Sales | ($3.60) | 75 | | $239.60 |
| 1/20/2004 6:46:52 PM | PEK4059 | Sales | ($16.80) | 73 | | $243.20 |
| 1/15/2004 5:05:23 PM | AMService | ITS Withdrawal | ($5.00) | ITS0115 | | $260.00 |
| 1/14/2004 6:12:07 PM | AMService | ITS Withdrawal | ($4.00) | ITS0114 | | $265.00 |
| 1/14/2004 2:44:15 PM | PEK4019 | Local Collections | $25.00 | 9943 | | $269.00 |
| 1/13/2004 6:04:14 PM | PEK1789 | Sales | ($27.45) | 45 | | $244.00 |
| 1/6/2004 6:42:21 PM | PEK0505 | Sales | ($58.30) | 74 | | $271.45 |
| 1/5/2004 1:24:05 PM | PEK4019 | Gift | ($15.00) | 631 | 631 | $329.75 |
| 1/5/2004 9:14:19 AM | PEK4019 | Payroll - IPP | $7.56 | JV0052 | | $344.75 |
| 12/23/2003 6:55:34 PM | PEK1789 | Sales | ($33.95) | 91 | | $337.19 |
| 12/23/2003 5:05:54 PM | AMService | ITS Withdrawal | ($2.00) | ITS1223 | | $371.14 |
| 12/23/2003 3:20:49 PM | PEK4019 | Local Collections | $50.00 | 7811 | | $373.14 |
| 12/22/2003 6:31:56 PM | AMService | ITS Withdrawal | ($3.00) | ITS1222 | | $323.14 |
| 12/19/2003 3:06:28 PM | PEK4019 | Local Collections | $50.00 | 7324 | | $326.14 |
| 12/17/2003 6:19:35 PM | PEK0505 | Sales | ($31.34) | 53 | | $276.14 |
| 12/17/2003 11:00:13 AM | PEK4019 | Gift | ($125.00) | 539 | 539 | $307.48 |
| 12/16/2003 3:06:34 PM | PEK4019 | Local Collections | $40.00 | 6851 | | $432.48 |
| 12/14/2003 8:37:37 PM | AMService | ITS Withdrawal | ($2.00) | ITS1214 | | $392.48 |
| 12/12/2003 2:38:21 PM | PEK4019 | Local Collections | $250.00 | 6564 | | $394.48 |
| 12/12/2003 12:40:02 PM | PEK4019 | Gift | ($125.00) | 485 | 485 | $144.48 |
| 12/11/2003 7:42:49 PM | AMService | ITS Withdrawal | ($1.00) | ITS1211 | | $269.48 |
| 12/11/2003 3:08:04 PM | PEK2867 | Local Collections | $25.00 | 6457 | | $270.48 |
| 12/10/2003 6:17:27 PM | PEK0505 | Sales | ($13.10) | 52 | | $245.48 |
| 12/10/2003 2:42:36 PM | PEK4019 | Local Collections | $10.00 | 6349 | | $258.58 |
| 12/7/2003 5:09:23 PM | AMService | ITS Withdrawal | ($2.00) | ITS1207 | | $248.58 |
| 12/3/2003 8:30:01 PM | AMService | ITS Withdrawal | ($5.00) | ITS1203 | | $250.58 |
| 12/3/2003 6:04:28 PM | PEK1789 | Sales | ($22.55) | 50 | | $255.58 |
| 12/2/2003 2:38:38 PM | PEK4019 | Local Collections | $50.00 | 5437 | | $278.13 |
| 12/2/2003 7:58:51 AM | PEK4019 | Payroll - IPP | $5.28 | JV0030 | | $228.13 |
| 11/28/2003 4:42:57 PM | AMService | ITS Withdrawal | ($3.00) | ITS1128 | | $222.85 |
| 11/26/2003 5:34:56 PM | PEK0505 | Sales | ($32.05) | 25 | | $225.85 |
| 11/20/2003 7:08:03 PM | AMService | ITS Withdrawal | ($4.00) | ITS1120 | | $257.90 |
| 11/19/2003 5:51:58 PM | PEK1789 | Sales | ($34.45) | 38 | | $261.90 |
| 11/12/2003 7:32:09 PM | PEK4059 | Sales | ($28.90) | 83 | | $296.35 |
| 11/12/2003 4:36:01 PM | AMService | ITS Withdrawal | ($1.00) | ITS1112 | | $325.25 |
| 11/8/2003 5:02:48 PM | AMService | ITS Withdrawal | ($3.00) | ITS1108 | | $326.25 |
| 11/5/2003 5:58:26 PM | PEK1789 | Sales | ($24.80) | 57 | | $329.25 |
| 11/5/2003 1:43:43 PM | PEK4019 | Gift | ($15.00) | 236 | 236 | $354.05 |
| 11/4/2003 8:51:38 AM | PEK4019 | Payroll - IPP | $3.60 | JV0021 | | $369.05 |
| 10/31/2003 8:27:32 PM | AMService | ITS Withdrawal | ($3.00) | ITS1031 | | $365.45 |
| 10/31/2003 2:50:22 PM | PEK4019 | Local Collections | $70.00 | 2658 | | $368.45 |
| 10/30/2003 4:30:44 PM | AMService | ITS Withdrawal | ($3.00) | ITS1030 | | $298.45 |
| 10/29/2003 6:08:26 PM | PEK1789 | Sales | ($10.00) | 36 | | $301.45 |

1 2 3 4

## All Transactions

| | | |
|---|---|---|
| Inmate Reg #: | 98369024 | Current Institution: Pekin FCI |
| Inmate Name: | BERCHIOLLY, THOMAS | Housing Unit: ILLINOIS |
| Report Date: | 09/13/2004 | Living Quarters: A01-124L |
| Report Time: | 5:48:58 PM | |

| Date/Time | User Id | Transaction Type | Amount | Ref# | Payment# | Balance |
|---|---|---|---|---|---|---|
| 9/10/2004 6:22:05 PM | PEK1789 | Sales | ($21.50) | 62 | | $281.94 |
| 9/9/2004 7:00:54 PM | AMService | ITS Withdrawal | ($2.00) | ITS0909 | | $303.44 |
| 9/8/2004 5:50:54 PM | AMService | ITS Withdrawal | ($3.00) | ITS0908 | | $305.44 |
| 9/6/2004 6:37:52 PM | AMService | ITS Withdrawal | ($2.00) | ITS0906 | | $308.44 |
| 9/5/2004 5:45:55 PM | AMService | ITS Withdrawal | ($2.00) | ITS0905 | | $310.44 |
| 9/2/2004 9:59:53 AM | PEK2867 | Payroll - IPP | $6.80 | JV0135 | | $312.44 |
| 9/2/2004 8:13:13 AM | AMSERVICE | Lockbox - CD | $50.00 | 70115104 | | $305.64 |
| 9/1/2004 4:54:35 PM | AMService | ITS Withdrawal | ($2.00) | ITS0901 | | $255.64 |
| 8/26/2004 5:51:28 PM | PEK9505 | Sales | ($18.95) | 49 | | $257.64 |
| 8/19/2004 5:21:28 PM | PEK1789 | Sales | ($33.80) | 29 | | $276.59 |
| 8/13/2004 5:43:33 PM | AMService | ITS Withdrawal | ($2.00) | ITS0813 | | $310.39 |
| 8/13/2004 8:43:06 AM | AMSERVICE | Lockbox - CD | $250.00 | 70113704 | | $312.39 |
| 8/12/2004 6:06:03 PM | PEK1789 | Sales | ($15.10) | 34 | | $62.39 |
| 8/10/2004 5:13:29 PM | AMSERVICE | Lockbox - CD | $75.00 | 70113404 | | $77.49 |
| 8/9/2004 12:16:12 PM | PEK8222 | Sales | $0.00 | 30 | | $2.49 |
| 8/6/2004 11:53:08 AM | PEK9505 | Sales | ($3.00) | 73 | | $2.49 |
| 8/5/2004 5:34:15 PM | PEK1789 | Sales | ($19.90) | 30 | | $5.49 |
| 8/4/2004 7:01:19 PM | AMService | ITS Withdrawal | ($2.00) | ITS0804 | | $25.39 |
| 8/3/2004 6:09:23 PM | AMService | ITS Withdrawal | ($2.00) | ITS0803 | | $27.39 |
| 8/3/2004 9:52:22 AM | PEK4019 | Payroll - IPP | $4.80 | JV0128 | | $29.39 |
| 8/1/2004 8:35:06 PM | AMService | ITS Withdrawal | ($1.00) | ITS0801 | | $24.59 |
| 8/1/2004 8:25:57 PM | AMService | ITS Withdrawal | ($2.00) | ITS0801 | | $25.59 |
| 7/29/2004 5:39:58 PM | PEK1789 | Sales | ($22.75) | 25 | | $27.59 |
| 7/29/2004 7:48:49 AM | AMSERVICE | Lockbox - CD | $50.00 | 70112604 | | $50.34 |
| 7/22/2004 5:41:24 PM | PEK9505 | Sales | ($21.25) | 47 | | $0.34 |
| 7/19/2004 8:54:07 PM | AMService | ITS Withdrawal | ($2.00) | ITS0719 | | $21.59 |
| 7/15/2004 6:22:42 PM | PEK7022 | Sales | ($34.10) | 66 | | $23.59 |
| 7/9/2004 7:10:23 PM | AMService | ITS Withdrawal | ($2.00) | ITS0709 | | $57.69 |
| 7/9/2004 2:26:45 PM | PEK2867 | Gift | ($15.00) | | 1886 | $59.69 |
| 7/8/2004 7:08:19 PM | PEK1789 | Sales | ($53.85) | 98 | | $74.69 |
| 7/7/2004 5:40:32 PM | AMService | ITS Withdrawal | ($1.00) | ITS0707 | | $128.54 |
| 7/7/2004 5:32:16 PM | AMService | ITS Withdrawal | ($2.00) | ITS0707 | | $129.54 |
| 7/4/2004 10:35:10 AM | AMService | ITS Withdrawal | ($2.00) | ITS0704 | | $131.54 |
| 7/2/2004 9:39:23 AM | PEK2867 | Payroll - IPP | $6.00 | JV0115 | | $133.54 |
| 7/1/2004 8:33:57 AM | AMSERVICE | Lockbox - CD | $50.00 | 70110702 | | $127.54 |
| 6/27/2004 6:32:17 PM | AMService | ITS Withdrawal | ($1.00) | ITS0627 | | $77.54 |
| 6/21/2004 7:21:45 PM | PEK1789 | Sales | ($4.70) | 102 | | $78.54 |
| 6/21/2004 7:16:07 PM | PEK1789 | Sales | ($44.35) | 98 | | $83.24 |
| 6/21/2004 5:13:52 PM | AMService | ITS Withdrawal | ($1.00) | ITS0621 | | $127.59 |
| 6/20/2004 1:36:58 PM | AMService | ITS Withdrawal | ($1.00) | ITS0620 | | $128.59 |
| 6/18/2004 2:55:09 PM | PEK2867 | Gift | ($15.00) | | 1781 | $129.59 |
| 6/15/2004 6:32:46 PM | AMService | ITS Withdrawal | ($1.00) | ITS0615 | | $144.59 |
| 6/14/2004 5:43:54 PM | PEK1789 | Sales | ($36.70) | 42 | | $145.59 |
| 6/9/2004 9:58:31 AM | PEK2867 | Gift | ($15.00) | | 1671 | $182.29 |
| 6/8/2004 11:55:21 AM | AMSERVICE | Lockbox - CD | $75.00 | 70109002 | | $197.29 |
| 6/7/2004 6:07:55 PM | PEK1789 | Sales | ($24.33) | 51 | | $122.29 |
| 6/5/2004 6:39:36 AM | AMService | ITS Withdrawal | ($2.00) | ITS0605 | | $146.62 |
| 6/4/2004 8:24:51 PM | AMService | ITS Withdrawal | ($2.00) | ITS0604 | | $148.62 |
| 6/3/2004 8:15:04 PM | AMService | ITS Withdrawal | ($1.00) | ITS0603 | | $150.62 |
| 6/2/2004 11:11:58 AM | AMSERVICE | Lockbox - CD | $25.00 | 70108602 | | $151.62 |

1 2 3 4

**RECEIVED**

SEP 1 5 2004

JOHN M. WATERS, CLERK
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

Thomas Berchiolly,           )
    PLAINTIFF,              )
                            )
v.                           )
                            )
John Ashcroft,               )
Attorney General, United     )
States of America, in his    )
individual and official      )
capacities,                  )
                            )
Harley Lappin,               )
Director, Bureau of Prisons, )    Case No. 04-1318
in his individual and official )
capacities,                  )
                            )
Suzanne R. Hastings,         )
Warden at Federal Correctional )
Institution in Pekin, Illinois, )
in her individual and official )
capacities,                  )
                            )
Eddie Somolio,               )
Clinical Director at Federal )
Correctional Institution in  )
Pekin, Illinois, in his      )
individual and official      )
capacities,                  )
                            )
Angel Ortiz,                 )
Physician at Federal         )
Correctional Institution in  )
Pekin, Illinois, in his      )
individual and official      )
capacities,                  )
                            )
Harris Hansen,               )
Physicians Assistant at      )
Federal Correctional         )
Institution in Pekin, Illinois, )
in his individual and official )
capacities,                  )

```
Mr. Gould,                        )
Pharmacist at Federal             )
Correctional Institution in       )
Pekin, Illinois, in his           )
individual and official           )
capacities,                       )
                                  )
Mr. Jackson,                      )
Physicians Assistant at           )
Federal Correctional              )
Institution in Pekin,             )
Illinois, in his official         )
and idividual                     )
capacities,                       )
                                  )
      DEFENDANT(S).               )
                                  )
```

---

## PLAINTIFF'S CIVIL RIGHTS COMPLAINT

---

### A. Basis of Jurisdiction

This action arises under Plaintiff's right to be free from cruel and unusual punishment, as mandated by the 8th Amendment of the Constitution of the United States.

This Court has jurisdiction of these matters pursuant to Title 28 U.S.C. §§ 1331, 1343, and Article III, §2, cl.1 of the Constitution of the United States.

### B. Principal Parties

PLAINTIFF, is a federal prisoner proceeding pro se and in forma pauperis, and resides at his place of incarceration –– Thomas Berchiolly – Reg. No. 98369-024 – FCI Pekin – Pekin, IL 61555-5000.

2

DEFENDANT(S) are officers, staff, and/or agents of the U.S. Department of Justice, a governmental entity of the United States of America, and may be served by serving the United States and also by sending a copy of summons and of the complaint to: John Ashcroft, U.S. Attorney General — 950 Pennsylvania Ave., N.W.; Rm. 4400 — Washington, D.C. 20530.

Defendant John Ashcroft, Attorney General of the United States of America, is primarily responsible for the operations and employees of the U.S. Department of Justice. See 28 U.S.C. §504. These responsibilities necessarily include the provision of safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States. See Title 18 U.S.C. §4042(a)(2).

Defendant Harley Lappin, Director, Bureau of Prisons, is an individual responsible for the operations and employees of the same agency. These responsibilities include the provision of safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States. See Title 18 U.S.C. §4042(a)(2).

Defendant Suzanne Hastings, Warden at Federal Correctional Institution in Pekin, Illinois, is an individual responsible for the operations and employees at FCI Pekin.

Remaining Defendants are individuals responsible for the administration of inmate medical care at Federal Correctional Institution in Pekin, Illinois.

### C. Litigation History

Plaintiff states that he has not begun any other lawsuits in either state or federal court in relation to the matters stated herein.

### D. Exhaustion of Administrative Remedies

Plaintiff states that he has exhausted all grievance procedures in accordance with the <u>Prison Litigation Reform Act</u>, Title 42 U.S.C. §1997e(a), before the filing of this civil action with the U.S. District Court. Evidence of exhaustion exists in the Administrative Remedy Index of the Bureau of Prisons SENTRY Program which is denoted by #312419-F1, #312419-R1, and #312419-A1.

### E. Statement of Facts

1. On or about October 22, 2002, Plaintiff ("Berchiolly") noticed an irregular lesion which appeared around the temple area of his face. After examining the irregularity Berchiolly approached Defendant Eddie Somolio on the same day expressing concern about the affected area possibly being some type of skin cancer. In addition, Berchiolly submitted an inmate request to Defendant Ortiz on the same day reiterating identical concerns. Consequently, an appointment was scheduled for November 04, 2002.

2. On or about November 04, 2002, Berchiolly was examined by Defendant Jackson where he explained his concerns that the lesion around his teple was some type of skin cancer. Subsequent to performing an initial examination of the afflicted area, Jackson confered with Defendants Ortiz and Somolio.

Defendant Jackson was instructed that the lesion was merely dry skin. As such, Berchiolly was sent away without any type of treatment or medication.

3. Following his previous medical visit, Berchiolly noticed the lesion on his temple had increased in size, had irregular borders, and began to differ in pigmentation as time progresed. These changes prompted Berchiolly to visit FCI Pekin Health Services on or about February 12, 2003, where he was examined by Defendant Jackson. Upon completing his examination, Defendant Jackson arrived at the conclusion that the lesion was skin cancer. However, Defendant Ortiz superseded Jackson's diagnosis and further concluded that the lesion was no more than dry skin. Berchiolly was again excused without being afforded any type of additional treatment or medication.

4. Between the dates of February 12, 2003 through July 07, 2003, Berchiolly visited FCI Pekin Health Services on several occassions concerning the lesion on his temple which was still increasing in size. Defendants Ortiz, Hansen, and Jackson were the attending medical personell. On each and every seperate occassion that Berchiolly visited Health Services he was denied any means of treatment, medication, and/or diagnostic testing to alleviate his condition.

5. On or about July 07, 2003, Berchiolly submitted an inmate request to Defendant Jackson. Within the same Berchiolly informed Jackson that the lesion had doubled in size, bled when he washed his face, and caused him a significant amount of pain.

5

Shortly thereafter, Berchiolly was scheduled with an appointment to see Defendant Jackson in mid July of 2003. Midway through performing an examination of the lesion on Berchiolly's face, Jackson was called away on an emergency medical call. As a result, Defendant Ortiz assumed the responsibility of addressing Berchiolly's medical concerns. While Defendant Ortiz was examining the lesion on Berchiolly's face, he was interupted by Defendant Gould. Defendant Ortiz stopped his examiniation and jokingly informed Gould of Berchiolly's concerns that the lesion on his face was some type of skin cancer. Ortiz further explained to Gould that Defendant Jackson agreed with Berchiollys assessment that the lesion was skin cancer. At that instance, Gould chuckled and remarked that Jackson tends to overreact. With barely any examination, Gould concluded that the lesion was only dry skin and informed Berchiolly to apply some lotion to the area.

6. As the irregularity on his temple began to increase in size and bleed profusely, Berchiolly submitted an additional inmate request to staff on or about August 29, 2003. Immediately thereafter Defendant Ortiz responded informing Berchiolly that he was scheduled to see a general surgeon to have a biposy. However, although the appointment was scheduled it was canceled for unspecified reasons.

7. On September 11, 2003, Defendant Ortiz along with other unknwon members of the Utilization Review Committee ("URC") determined that a biopsy was necessary. The URC further classified Berchiolly's condition as "presently medically necessary", requiring treatment in 14 days.

6

However, no such treatment was provided for a period of 2 months despite the determinations of the URC and the mandate of BOP policy.

8. In the interim, it was determined by contract physician, Scott Reid, that the lesion was basil cell carcinoma, a potentially deadly form of skin cancer.

9. On or about September 22, 2003, Berchiolly addressed an inmate request to Defendant Ortiz expressing concerns about the lack of treatment that he was receiving and questioning why the biopsy was not being performed as previously indicated.

10. On or about September 30, 2003, Berchiolly received a response to his previously submitted request. Defendant Somolio alleged that it had been determined the lesion was non-cancerous. This being so despite Scott Reid's diagnosis that the lesion was basil cell carcinoma, a type of skin cancer.

11. Berchiolly submitted another inmate request to staff on or about October 03, 2003, reiterating concerns about the lesion on his face and lack of treatment. After waiting approximately one month, Berchiolly submitted yet another inmate request complaining of pain and voicing concerns that the lesion receive prompt treatment. Health Services personell responded on or about October 31, 2003, indicating that surgery had been scheduled to remove the lesion.

12. After receiving no additional treatment to relieve his condition and symptoms associated with the lesion, Berchiolly submitted another request to Defendant Ortiz. In his request Berchiolly complained of pain, dizziness, and lack of treatment.

Approximately three days prior to submitting the request to Defendant Ortiz, Berchiolly was operated on. On or about November 18, 2003, contract physician, Dr. Reid, removed the lesion from Berchiolly's temple. As a result of the procedure a considerable tumorous mass was removed from the temple area of Berchiolly's face.

13. Following a biopsy of the removed tissue excised from Berchiolly's temple, it was determined that the tumor was a cancerous substance known as invasive squamous cell carcinoma, a potentially deadly form of skin cancer.

14. Although squamous cell carcinomas usually remain confined to the epidermis for some time, they eventually penetrate the underlying tissues if not treated. Squamous cell carcinoma has the potential to metastisize to distant tissues and organs (in this case Plaintiff's brain and eyes). When this happens this condition can be fatal.

15. On or about November 25, 2003, Berchiolly addressed a letter to FCI Pekin Health Services complaining of the scaring around the area where the tumor was removed and the unecessary stress and pain that he experienced as a result of lack of treatment. Immediately following, Berchiolly submitted an inmate request to Defendant Hansen on December 08, 2003, complaining that he was experiencing dizziness and was concerned that it could be related to the lesion recently removed from his temple. Defendant Hansen responded on December 24, 2003, instructing Berchiolly to sign up for sick call to address any concerns that he might have.

16. To date no additional treatment has been provided to Berchiolly and no further testing was conducted after the operation to determine whether the cancer has been completely eradicated.

17. Berchiolly was detered at every stage of attempting to secure treatment to remove the tumor from his face. On several occassions Berchiolly was even threatened by various medical officials and informed that he would be placed in segregation if he did not refrain from attempting to get treatment for the lesion on his face. All indicated that the lesion was only dry skin and not to be concerned about it.

18. Berchiolly was permanently disfigured as a result of the operation performed to remove the tumor from his face. Because the herein named defendants allowed for the tumor to go untreated for nearly a year, the cancer grew into a considerable mass before being removed. Such lack of treatment resulted in a significant scar on Berchiolly's face following the procedure. Moreover, Berchiolly was forced to live in pain and suffer due to lack of treatment.

19. Failure to adequately train employees, allocate sufficient funds, and systemactic defficiencies in hiring competent medical personell has contributed to Berchiolly being denied adequate treatment. Defendants John Ashcroft, Harley Lappin and Suzanne Hastings have failed to exercise adequate oversight of subordinate personell to ensure the proper administration of medical care within BOP facilities.

20. The sheer volume of medical related complaints filed at every level of the administrative hierarchy exhibits a knowing failure on behalf of supervisory defendants to take affirmative action to ensure the proper administration of medical care within the BOP.

21. Defendants Ashcroft, Lappin, and Hastings are officials responsible for the promulgation of policy within the BOP. The same defendants exercise a significant amount of influence over the implimentation and interpretation of policy, and can therefore be held liable for the deprivation of Berchiolly's rights if their acts or omissions somehow contributed thereto. See Vargas Harrison v. Racine Unified School District, 272 F.3d 964, 970-973 (7th Cir.2001).

### F. Count 1 - Violation of Constitutional Rights

22. Defendants employed at FCI Pekin Health Services owed Plaintiff a duty to provide him with timely and adequate medical care in a manner consistent with 8th Amendment standards. Defendants breached their duties when they failed to provide Plaintiff with adequate medical care.

23. Plaintiff's complained of medical condition was objectively, sufficiently serious and Defendants were deliberately indifferent to that condition. See Perkins v. Lawson, 312 F.3d 872, 875 (7th Cir.2002).

24. Defendants knew of the substantial risk posed to Plaintiff's health and safety from the very fact that the risk was obvious. See Walker v. Benjamin, 293 F.3d 1030, 1037 (7th Cir.2002).

25. Subsequent to learning that the irregularity on Plaintiff's temple was cancerous, Defendants unecessarily delayed treatment for nearly two months thereby constituting deliberate indifference. See Ralston v. McGovern, 167 F.3d 1160, 1162 (7th Cir.1995).

26. Furthermore, Defendants delay in treating Plaintiff's condition for an entire year resulted in permanent disfigurement and the wanton infliction of pain. Allowing for the cancer to proliferate and go untreated for such a period of time violated Plaintiff's rights. See Langston v. Peters, 100 F.3d 1235, 1240 (7th Cir.1996).

### G. Count 2 - Violation of Constitutional Rights

27. Defendants John Ashcroft and Harley Lappin owed Plaintiff a duty to provide for his care and safekeeping. See Title 18 U.S.C. §4042(a)(2). Defendants failed to perform this duty through their idleness and unassertiveness in ensuring the proper administration of inmate medical care within the BOP.

28. Institutional procedures, personell, and facilities at FCI Pekin are inadequate to ensure Plaintiff adequate access to medical care. See Bass By Lewis v. Wallenstein, 769 F.2d 1173, 1184 (7th Cir.1985).

29. As supervisory officials aware of the rapidly declining quality of medical care within the BOP, Defendants Ashcroft and Lappin exhibited a knowing failure to remedy defficiencies in the administration of medical care at the institutional and BOP levels. See Smith v. Rowe, 761 F.2d 360, 369 (7th Cir.1985).

### H. Count 3 - Violation of Constitutional Rights

30. Defendant Suzanne Hastings owed Plaintiff a duty to ensure that he be provided with timely and adequate medical care. Defendant Hastings failed to perform this duty through her idleness and unassertiveness in ensuring the proper administration of inmate medical care at FCI Pekin.

31. Institutional procedures, personell, and facilities at FCI Pekin are inadequate to ensure Plaintiff adequate access to medical care. See Bass By Lewis v. Wallenstein, 769 F.2d 1173, 1186 (7th Cir.1985).

32. As a spervisory official aware of the rapidly declining quality of medical care at FCI Pekin, Defendant Suzanne Hastings exhibited a knowing failure to remedy obvious defficiencies in the administration of medical care at FCI Pekin. See Smith v. Rowe, 761 F.2d 360, 369 (7th Cir.1985).

### I. Damages

33. As a direct result of the herein named defendants' negligence and failures to ensure access to adequate medical care, Plaintiff suffered the following injuries and damages:

   a. Physical pain and mental anguish in the past and future.
   b. Disfigurement in the past and future.
   c. Pain and suffering.
   d. Physical impairment in the past and future.

## J. Relief Requested

34. Plaintiff hereby requests relief in the matter of his civil rights complaint in the following forms and amounts:

35. As it concerns Count "1", above, Plaintiff requests that he be awarded nominal damages and the amount of $450,000.00 in punitive damages. Plaintiff further requests compensatory damages in the amount of $250,000.00.

36. As it concerns Count "2", above, Plaintiff requests that he be awarded nominal damages and the amount of $200,000.00 in punitive damages. Plaintiff further requests compensatory damages in the amount of $150,000.00.

37. As it concerns Count "3", above, Plaintiff requests that he be awarded nominal damages and the amount of $200,000.00 in punitive damages. Plaintiff further requests compensatory damages in the amount of $150,000.00.

38. Plaintiff hereby requests any and all other relief deemed fair, just, and equitable in the matters presented herein.

## K. Demand For Jury Trial

39. Plaintiff hereby demands trial by jury in this matter of his civil rights complaint.

## STATEMENT UNDER PENALTY OF PERJURY

I, Thomas Berchiolly, the undersigned, hereby affirm under penalty of perjury and pursuant to 28 U.S.C. §1746 that the foregoing is true and correct based upon my knowledge and belief.

9-14-04
Executed on this day of:

*Thomas Berchiolly 98369-024*
Thomas Berchiolly #98369-024