RECEIVED

SEP 1 5 2004

JOHN M. WATERS, CLERK
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

E-FILED
Tuesday, 12 July, 2005  02:50:18 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

Thomas Berchiolly,
    PLAINTIFF,

     v.

John Ashcroft,
Attorney General, United
States of America, in his
individual and official
capacities,

Harley Lappin,
Director, Bureau of Prisons,
in his individual and official
capacities,

Suzanne R. Hastings,
Warden at Federal Correctional
Institution in Pekin, Illinois,
in her individual and official
capacities,

Eddie Somolio,
Clinical Director at Federal
Correctional Institution in
Pekin, Illinois, in his
individual and official
capacities,

Angel Ortiz,
Physician at Federal
Correctional Institution in
Pekin, Illinois, in his
individual and official
capacities,

Harris Hansen,
Physicians Assistant at
Federal Correctional
Institution in Pekin, Illinois,
in his individual and official
capacities,

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**FILED**

JUL 1 2 2005

JOHN M. WATERS, Clerk
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

Case No. _04-1318_

```
Mr. Gould,                        )
Pharmacist at Federal             )
Correctional Institution in       )
Pekin, Illinois, in his           )
individual and official           )
capacities,                       )
                                  )
Mr. Jackson,                      )
Physicians Assistant at           )
Federal Correctional              )
Institution in Pekin,             )
Illinois, in his official         )
and idividual                     )
capacities,                       )
                                  )
     DEFENDANT(S).                )
                                  )
```

---

## PLAINTIFF'S CIVIL RIGHTS COMPLAINT

---

### A. Basis of Jurisdiction

This action arises under Plaintiff's right to be free from cruel and unusual punishment, as mandated by the 8th Amendment of the Constitution of the United States.

This Court has jurisdiction of these matters pursuant to Title 28 U.S.C. §§ 1331, 1343, and Article III, §2, cl.1 of the Constitution of the United States.

### B. Principal Parties

PLAINTIFF, is a federal prisoner proceeding pro se and in forma pauperis, and resides at his place of incarceration —— Thomas Berchiolly — Reg. No. 98369-024 — FCI Pekin — Pekin, IL 61555-5000.

2

DEFENDANT(S) are officers, staff, and/or agents of the U.S. Department of Justice, a governmental entity of the United States of America, and may be served by serving the United States and also by sending a copy of summons and of the complaint to: John Ashcroft, U.S. Attorney General — 950 Pennsylvania Ave., N.W.; Rm. 4400 — Washington, D.C. 20530.

Defendant John Ashcroft, Attorney General of the United States of America, is primarily responsible for the operations and employees of the U.S. Department of Justice. See 28 U.S.C. §504. These responsibilities necessarily include the provision of safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States. See Title 18 U.S.C. §4042(a)(2).

Defendant Harley Lappin, Director, Bureau of Prisons, is an individual responsible for the operations and employees of the same agency. These responsibilities include the provision of safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States. See Title 18 U.S.C. §4042(a)(2).

Defendant Suzanne Hastings, Warden at Federal Correctional Institution in Pekin, Illinois, is an individual responsible for the operations and employees at FCI Pekin.

Remaining Defendants are individuals responsible for the administration of inmate medical care at Federal Correctional Institution in Pekin, Illinois.

## C. Litigation History

Plaintiff states that he has not begun any other lawsuits in either state or federal court in relation to the matters stated herein.

## D. Exhaustion of Administrative Remedies

Plaintiff states that he has exhausted all grievance procedures in accordance with the Prison Litigation Reform Act, Title 42 U.S.C. §1997e(a), before the filing of this civil action with the U.S. District Court. Evidence of exhaustion exists in the Administrative Remedy Index of the Bureau of Prisons SENTRY Program which is denoted by #312419-F1, #312419-R1, and #312419-A1.

## E. Statement of Facts

1.    On or about October 22, 2002, Plaintiff ("Berchiolly") noticed an irregular lesion which appeared around the temple area of his face. After examining the irregularity Berchiolly approached Defendant Eddie Somolio on the same day expressing concern about the affected area possibly being some type of skin cancer. In addition, Berchiolly submitted an inmate request to Defendant Ortiz on the same day reiterating identical concerns. Consequently, an appointment was scheduled for November 04, 2002.

2.    On or about November 04, 2002, Berchiolly was examined by Defendant Jackson where he explained his concerns that the lesion around his teple was some type of skin cancer. Subsequent to performing an initial examination of the afflicted area, Jackson confered with Defendants Ortiz and Somolio.

4

Defendant Jackson was instructed that the lesion was merely dry skin. As such, Berchiolly was sent away without any type of treatment or medication.

3.    Following his previous medical visit, Berchiolly noticed the lesion on his temple had increased in size, had irregular borders, and began to differ in pigmentation as time progresed. These changes prompted Berchiolly to visit FCI Pekin Health Services on or about February 12, 2003, where he was examined by Defendant Jackson. Upon completing his examination, Defendant Jackson arrived at the conclusion that the lesion was skin cancer. However, Defendant Ortiz superseded Jackson's diagnosis and further concluded that the lesion was no more than dry skin. Berchiolly was again excused without being afforded any type of additional treatment or medication.

4.    Between the dates of February 12, 2003 through July 07, 2003, Berchiolly visited FCI Pekin Health Services on several occassions concerning the lesion on his temple which was still increasing in size. Defendants Ortiz, Hansen, and Jackson were the attending medical personell. On each and every seperate occassion that Berchiolly visited Health Services he was denied any means of treatment, medication, and/or diagnostic testing to alleviate his condition.

5.    On or about July 07, 2003, Berchiolly submitted an inmate request to Defendant Jackson. Within the same Berchiolly informed Jackson that the lesion had doubled in size, bled when he washed his face, and caused him a significant amount of pain.

5

Shortly thereafter, Berchiolly was scheduled with an appointment
to see Defendant Jackson in mid July of 2003. Midway through
performing an examination of the lesion on Berchiolly's face,
Jackson was called away on an emergency medical call. As a result,
Defendant Ortiz assumed the responsibility of addressing Berchiolly's
medical concerns. While Defendant Ortiz was examining the lesion
on Berchiolly's face, he was interupted by Defendant Gould.
Defendant Ortiz stopped his examiniation and jokingly informed
Gould of Berchiolly's concerns that the lesion on his face was
some type of skin cancer. Ortiz further explained to Gould that
Defendant Jackson agreed with Berchiollys assessment that the
lesion was skin cancer. At that instance, Gould chuckled and
remarked that Jackson tends to overreact. With barely any exam-
ination, Gould concluded that the lesion was only dry skin and
informed Berchiolly to apply some lotion to the area.

6.    As the irregularity on his temple began to increase in
size and bleed profusely, Berchiolly submitted an additional inmate
request to staff on or about August 29, 2003. Immediately thereafter
Defendant Ortiz responded informing Berchiolly that he was
scheduled to see a general surgeon to have a biposy. However,
although the appointment was scheduled it was canceled for un-
specified reasons.

7.    On September 11, 2003, Defendant Ortiz along with other
unknwon members of the Utilization Review Committee ("URC")
determined that a biopsy was necessary. The URC further classified
Berchiolly's condition as "presently medically necessary", requiring
treatment in 14 days.



However, no such treatment was provided for a period of 2 months despite the determinations of the URC and the mandate of BOP policy.

8.    In the interim, it was determined by contract physician, Scott Reid, that the lesion was basil cell carcinoma, a potentially deadly form of skin cancer.

9.    On or about September 22, 2003, Berchiolly addressed an inmate request to Defendant Ortiz expressing concerns about the lack of treatment that he was receiving and questioning why the biopsy was not being performed as previously indicated.

10.   On or about September 30, 2003, Berchiolly received a response to his previously submitted request. Defendant Somolio alleged that it had been determined the lesion was non-cancerous. This being so despite Scott Reid's diagnosis that the lesion was basil cell carcinoma, a type of skin cancer.

11.   Berchiolly submitted another inmate request to staff on or about October 03, 2003, reiterating concerns about the lesion on his face and lack of treatment. After waiting approximately one month, Berchiolly submitted yet another inmate request complaining of pain and voicing concerns that the lesion receive prompt treatment. Health Services personell responded on or about October 31, 2003, indicating that surgery had been scheduled to remove the lesion.

12.   After receiving no additional treatment to relieve his condition and symptoms associated with the lesion, Berchiolly submitted another request to Defendant Ortiz. In his request Berchiolly complained of pain, dizziness, and lack of treatment.

7



Approximately three days prior to submitting the request to Defendant Ortiz, Berchiolly was operated on. On or about November 18, 2003, contract physician, Dr. Reid, removed the lesion from Berchiolly's temple. As a result of the procedure a considerable tumorous mass was removed from the temple area of Berchiolly's face.

13.   Following a biopsy of the removed tissue excised from Berchiolly's temple, it was determined that the tumor was a cancerous substance known as invasive squamous cell carcinoma, a potentially deadly form of skin cancer.

14.   Although squamous cell carcinomas usually remain confined to the epidermis for some time, they eventually penetrate the underlying tissues if not treated. Squamous cell carcinoma has the potential to metastisize to distant tissues and organs (in this case Plaintiff's brain and eyes). When this happens this condition can be fatal.

15.   On or about November 25, 2003, Berchiolly addressed a letter to FCI Pekin Health Services complaining of the scaring around the area where the tumor was removed and the unecessary stress and pain that he experienced as a result of lack of treatment. Immediately following, Berchiolly submitted an inmate request to Defendant Hansen on December 08, 2003, complaining that he was experiencing dizziness and was concerned that it could be related to the lesion recently removed from his temple. Defendant Hansen responded on December 24, 2003, instructing Berchiolly to sign up for sick call to address any concerns that he might have.