**E-FILED**
Monday, 12 June, 2006  03:29:06 PM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
AT PEORIA**

| | | |
|---|---|---|
| THOMAS BERCHIOLLY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 04-1318 |
| | ) | |
| EDDIE SOMOLIO[1], et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
AND/OR FOR SUMMARY JUDGMENT**

Now come the defendants, by and through their attorneys, Rodger A.
Heaton, United States Attorney for the Central District of Illinois, and Gerard A.
Brost, Assistant United States Attorney, and hereby submit their  Memorandum
in Support of Motion to Dismiss and/or for Summary Judgment, as follows:

**A. Facts**

The defendants rely upon the Statement of Undisputed Facts which
accompanies this motion and is incorporated herein.

**B. Standards for Summary Judgment**

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary
judgment is proper "if the pleadings, depositions, and admissions on file,
together with the affidavits, if any, show that there is no genuine issue as to any
material fact and that the moving party is entitled to a judgment as a matter of
law."  In ruling on a motion for summary judgment, the court is to construe all
justifiable inferences in favor of the non-movant. *Anderson v. Liberty Lobby, Inc.,*

---

[1]The correct spelling is Samalio.

1

477 U.S. 242, 255 (1986). A party who bears the burden of proof on a particular issue, however, may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact which requires a trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). There is no issue for trial "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249.

### C. Discussion

Thomas Berchiolly, plaintiff, an inmate at the Federal Correctional Institution in Pekin, Illinois ("FCI Pekin"), has alleged that several employees of the prison's medical unit violated his Eighth Amendment right to be free from cruel and unusual punishment when they were deliberately indifferent to his serious medical needs. Specifically, the plaintiff alleges that defendants Eddie Samalio, Angel Ortiz, Harris "Otto" Hansen, Dr. Gould and Robert Jackson[2] failed to promptly provide treatment of his skin cancer, basil cell carcinoma. As discussed below, based upon the facts in this case, the defendants are entitled to summary judgment and/or dismissal of the case against them.

### 1. Defendant William Gould

One of the defendants sued in this *Bivens* action is Dr. William Gould, a pharmacist at FCI Pekin. The plaintiff alleges that in mid-July 2003, defendant Ortiz informed defendant Gould that the lesion on the plaintiff's face appeared

---

[2]The plaintiff's complaint also lists as defendants John Ashcroft, Attorney General of the United States, Harley Lapin, Director of the Bureau of Prisons and Suzanne Hastings, Warden at FCI Pekin. On November 8, 2004, these defendants were dismissed from this case. (R.3)

to be dry skin although the plaintiff was concerned it was cancerous.  He also said that Defendant Jackson also thought the lesion was skin cancer.  "At that instance, Gould chuckled and remarked that Jackson tends to overreact.  With barely any examination, Gould concluded that the lesion was only dry skin and informed Berchiolly to apply some lotion to the area." (R.19,p.6)

This is the only allegation made against Gould and it is insufficient to reach to the level of a Constitutional violation.  At the time, the plaintiff was under the care of Physician's Assistant ("PA") Jackson and Dr. Ortiz.  Defendant Gould was a pharmacist. (App.126)  Even if Gould could override the decision of the plaintiff's treating physician, Dr. Ortiz, which he could not and did not do, a one-time mistaken diagnosis is not evidence of deliberate indifference. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Steele v. Choi*, 82 F.3d 175, 178 (7th Cir. 1996).  For this reason alone, Defendant Gould should be dismissed from this action for failure to state a claim against him under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Even if the plaintiff could make a sufficient showing that Gould had been deliberately indifferent to his medical needs, Gould as a Public Health Service employee has absolute immunity from suit in this *Bivens* action.

William Gould is a commissioned officer of the United States Public Health Service. (App.126)  As an officer of the Public Health Service. Dr. Gould has been assigned to the Federal Correctional Institution in Pekin, Illinois, as the Chief Pharmacist. (App.126)

Title 42, United States Code, § 233(a) provides that the Federal Tort Claim Act is the exclusive remedy for any action brought against an employee of the

3

Public Health Service.  This Section provides as follows:

> The remedy against the United States provided by
> sections 1346(b) and 2672 of Title 28, or by alternative
> benefits provided by the United States where the
> availability of such benefits precludes a remedy under
> section 1346(b) of Title 28, for damage for personal
> injury, including death, resulting from the performance
> of medical, surgical, dental, or related functions,
> including the conduct of clinical studies or
> investigation, by any commissioned officer or employee
> of the Public Health Service while acting within the
> scope of his office or employment, shall be exclusive of
> any other civil action or proceeding by reason of the
> same subject-matter against the officer or employee (or
> his estate) whose act or omission gave rise to the claim.

42 U.S.C. § 233(a).

Title 42, United States Code, § 233(a) precludes recovery under a *Bivens* claim for personal injuries relating to the performance of medical functions by any commissioned officer or employee of the Public Health Service while acting within the scope of his or her office or employment. *See Cuoco v. Moritsugu*, 222 F.3d 99, 107 (2d Cir. 2000) (under 42 U.S.C. § 233(a), members of the Public Health Service are immune from suit in a *Bivens* action if the injury for which compensation is sought resulted from the performance of a medical or related function while acting within the scope of their office or employment); *see also, Lewis v. Sauvey*, 708 F.Supp. 167, 168 (E.D. Mich. 1989); *Flickinger v. United States*, 523 F.Supp. 1372, 1374 (W.D. Pa. 1981); *see also Lojuk v. Quandt*, 706 F.2d 1456, 1463 (7th Cir. 1983).

As an employee of the Public Health Service, Defendant Gould is entitled to immunity from this *Bivens* action.  This case should, therefore, be dismissed against defendant Gould, for failure to state to a claim under Rule 12(b)(6) of the

4

Federal Rules of Civil Procedure.

### 2. Defendant Eddie Samalio

The plaintiff makes few allegations in his complaint against Eddie Samalio and as discussed below none of them, even if taken as true, rise to the level of an Eighth Amendment claim.

The plaintiff alleges in his complaint that he approached defendant Samalio on October 22, 2002, and expressed concern about an irregular lesion on his face which the plaintiff claims he then thought might have been cancerous. Apparently, on this same date, the plaintiff also submitted an inmate request to Defendant Ortiz[3] stating the same concerns. (R.19,p.4)

The plaintiff alleges that on November 4, 2002, he was examined by defendant Jackson[4] at which time the plaintiff allegedly stated he was concerned that the lesion might be cancerous. The plaintiff alleges that after the examination, Jackson conferred with defendants Ortiz and Samalio. (R.19,p.4) Defendant Jackson told the plaintiff that his lesion was dry skin. (R.19,p.4)

The plaintiff states that his next visit regarding this lesion was on February 12, 2003. (R.19,p.5) According to the plaintiff's complaint, between February 12, 2003 and July 7, 2003, defendants Ortiz, Jackson, and Hansen were the attending medical personnel. (R.19,p.5) There is no mention of defendant Samalio as being involved with or responsible for the plaintiff's medical treatment during this period of time. (R.19,p.5)

---

[3]In 2002, Angel Ortiz, M.D. was the Staff Physician at FCI Pekin. (App.132)

[4]Defendant Robert Jackson was a Physician's Assistant ("PA") at FCI Pekin at all relevant times. (App.136)

5

The plaintiff's next allegation against Samalio charges that in response to a September 30, 2003, inmate staff request, Samalio stated that it had been determined that the lesion was non-cancerous. (R.19,p.7)  No other allegations are made against defendant Samalio.

These allegations even if taken as true do not establish that defendant Samalio violated the plaintiff's Constitutional rights protected by the Eighth Amendment and, therefore, Samalio should be dismissed from this action for failure to state a claim against him under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

In addition, Defendant Samalio was an administrator, albeit a health care administrator, within FCI Pekin and was not a health care provider. (App.128) In his position, Samalio was not responsible for providing medical treatment to the inmates at the institution and he did not provide medical care to the plaintiff. (App.128-29)  Samalio was responsible for the administrative functions of the Health Services Unit. (App.128)  In that capacity he was responsible for the housekeeping, sanitation, maintenance, personnel, budget, procurement and supply functions of the Unit. (App.128)  He did not provide direct medical care to the inmates. (App.128-29)  The responsibility for providing medical care to the inmates lies with the Clinical Director who at the time was Defendant Ortiz (App.132); Samalio had no responsibility for the supervision of the Clinical Director. (App.128)  In fact, Samalio does not maintain privileges within the Bureau of Prisons to treat patients for medical concerns. (App.129)  Although he may have spoken with the plaintiff regarding the lesion on his face, at no time did Samalio medically assess the plaintiff's condition, nor did he provide any

6

medical treatment to the plaintiff. (App.129)  Although Samalio was a health care administrator who spoke with the plaintiff regarding his health condition, he did not make a clinical assessment of the plaintiff's condition and did not provide medical treatment to the plaintiff.  Samalio deferred to the health care professionals to provide medical treatment.

As the United States District Court for the Northern District of Illinois reasoned:

> Gora and Luther are prison administrators, not licensed medical practitioners.  Lacking the requisite expertise, they must necessarily place their confidence in the reports of the prison doctors whenever an inmate disputes a medical opinion as to what treatment is necessary and proper.  Defendants here clearly deferred to the professional medical judgment of the doctors attending plaintiff with respect to . . . the propriety of his treatment . . . .  Defendants' reliance upon the opinion of their medical staff as to the proper course of treatment for plaintiff is sufficient to insulate them from any liability under the eighth amendment. *See, McCracken v. Jones*, 562 F.2d 22, 24 (10th Cir. 1977).

*McEachern v. Civiletti,* 502 F.Supp. 532, 534 (N.D. Ill. 1980).

Similarly, Samalio's reliance upon medical staff evaluation of his health needs was entirely appropriate given Samalio's limited functions as a health services administrator.  The plaintiff cannot establish that defendant Samalio was deliberately indifferent to his serious medical needs.

### 3. As To All Defendants Plaintiff Cannot Establish An Eighth Amendment Violation

The Eighth Amendment prohibits the infliction of cruel and unusual punishment on those convicted of crimes. *Wilson v. Seiter*, 501 U.S. 294 (1991).  To state an Eighth Amendment claim of cruel and unusual punishment with respect

to medical care, an inmate - plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

> Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment.

*Id.* at 106.

Inadvertent failure to provide medical care or simple negligence does not amount to a constitutional violation. *Id.* The deliberate indifference standard is much stricter than a negligence standard. *See Snipes v. DeTella*, 95 F.3d 586, 590 (7th Cir. 1996). The Seventh Circuit has held that even gross negligence does not rise to deliberate indifference. *Matos ex. rel. Matos v. O'Sullivan*, 335 F.3d 553, 557 (7th Cir. 2003).

"A prison is not required by the Eighth Amendment to give a prisoner medical care that is as good as he would receive if he were a free person, let alone an affluent free person. He is entitled only to minimum care." *Maggert v. Hanks*, 131 F.3d 670, 671 (7th Cir. 1997) (internal citations omitted).

A claim of deliberate indifference to a serious medical need contains both an objective and a subjective component. To satisfy the objective component, a prisoner must demonstrate that his medical condition is "objectively, 'sufficiently serious.'" *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal

8

quotations omitted); *see also Walker v. Benjamin*, 293 F.3d 1030, 1037 (7th Cir. 2002). A serious medical condition is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention. *See Foelker v. Outagamie County*, 394 F.3d 510, 512-13 (7th Cir. 2005).

To satisfy the subjective component, a prisoner must demonstrate that prison officials acted with a " 'sufficiently culpable state of mind.' " *Farmer*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 297, (1991)). The officials must know of and disregard an excessive risk to inmate health; indeed they must "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and "must also draw the inference." *Farmer*, 511 U.S. at 837. This is not to say that a prisoner must establish that officials intended or desired the harm that transpired. *Walker*, 293 F.3d at 1037. Instead, it is enough to show that the defendants knew of a substantial risk of harm to the inmate and disregarded the risk. *Id*. Additionally, "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842.

In the medical context, the court looks at the totality of an inmate's medical care to evaluate whether a doctor was deliberately indifferent to the inmate's medical needs. *Dunigan ex rel. Nyman v. Winnebago County*, 165 F.3d 587, 591 (7th Cir. 1999); *Gutierrez v. Peters*, 111 F.3d 1364, 1375 (7th Cir. 1997).

In the case at bar, the plaintiff claims that defendants violated his Eighth Amendment rights when they failed to treat his condition for one year resulting in permanent disfigurement and the wanton infliction of pain. (R.19,p.11,¶26)

Also, the plaintiff charges that the defendants unnecessarily delayed treatment of his cancer for nearly two months constituting deliberate indifference. (R.19,p.11,¶25)

The plaintiff was originally seen on November 6, 2002, by Physician's Assistant ("PA") defendant Robert Jackson at which time Jackson noted an irregular slightly raised lesion on the defendant's forehead. (App.135)  Jackson wanted to rule out the possibility that this lesion was cancerous and attempted to schedule Berchiolly for an excisional biopsy.  Jackson testified that he believed that he filled out the proper paperwork so as to schedule the procedure. (App.135)  Neither Jackson nor the Clinical Director defendant Dr. Angel Ortiz can explain why the consultation for a biopsy was not scheduled at that time. (App.133,135)  However, no consultation was ordered.

The plaintiff was next seen for the lesion on July 17, 2003, by PA Jackson. (App.136)  On July 18, 2003, the plaintiff was also seen by defendant Dr. Ortiz, however, at that time the conversation centered on the plaintiff's knee condition, the plaintiff only mentioned a "skin rash." (App.133)  Benadryl was ordered for the rash. (App.133)

On September 2, 2003, Dr. Ortiz noted a small tumoration on the plaintiff's forehead which was pending biopsy.  Dr. Ortiz wrote a referral to a general surgeon and on September 22, 2003, informed the plaintiff the lesion would be biopsied. (App.133)

On September 30, 2003, the plaintiff was seen by the surgeon, Dr. Reid for a consultation at which time Dr. Reid recommended an excision of the lesion. (App.133)  The excision was conducted on November 18, 2003.  The pathology

10

report indicated that the spot was squamous cell carcinoma. (App.133)  The report also indicates that the entire cancerous area was removed. (App. 134)  Dr. Reid, who is not a defendant to this suit, indicated that no further follow-up with the plaintiff was necessary. (App.134)  On November 26, 2003, the plaintiff had six sutures removed by PA defendant Otto Hansen who counseled him on squamous cell carcinoma.  PA Hansen also noted that the wound was well-healed. (App.138)

On December 8, 2003, the plaintiff was seen by PA Hansen regarding a complaint of dizziness which the plaintiff thought may relate to his lesion. (App.138)  He was seen by a physician for his dizziness on December 15, 2003. (App.139)  The dizziness was not caused by the squamous cell carcinoma. (App.135)

On January 12, 2004, the plaintiff was again seen by PA Hansen for lesions to his right temple. (App.139)  The plaintiff claims that the lesions increased in size, were tender and bled when washed.  That same day PA Hansen wrote a request for a  consultation to Dr. Reid. (App.139)  The plaintiff was seen by Dr. Sutherland on March 3, 2004, who prescribed Efudex (also known as 5F-U cream which is an anti-cancer drug used to treat pre-cancerous and cancerous skin growth.) (App. 134)  According to his medical plan, the plaintiff was seen for a follow-up six weeks later on May 5, 2004, at which time Dr. Sutherland noted that the lesions were no longer present  and cancelled a previously scheduled surgical excision. (App.134)  The plaintiff continued with the Efudex cream and at a medical evaluation on June 23, 2004, there were no lesions noted on the plaintiff's face. (App.139)  Nor were any lesions noted to his face at a later

11

evaluation on September 30, 2004, though there did appear to be growths on plaintiff's penis which were diagnosed as genital warts. (App.140)  On November 10, 2004, plaintiff was transferred from FCI Pekin. (App.134)

Dr. Ortiz stated that if there had been any delay in treating plaintiff's squamous cell carcinoma it did not have any negative effect. (App.134) Squamous cell carcinoma is the second most common form of skin cancer. While it can eventually penetrate to underlying tissues, that is rare, and it is only at that stage that this carcinoma can be fatal. (App.136)  There is no indication that the carcinoma found in the plaintiff's forehead spread to any other areas of his body and the pathology report shows that removal of the cancer was successful. (App.136)

The plaintiff claims that there was a delay in his treatment that harmed him.  However, "[a]n inmate who complains that delay in medical treatment rose to a constitutional violation must place *verifying medical evidence* in the record to establish the detrimental effect of delay in medical treatment to succeed." *Langston v. Peters*, 100 F.3d 1235, 1240 (7th Cir. 1996) (quoting *Beyerbach v. Sears*, 49 F.3d 1324, 1326 (8th Cir. 1995)(emphasis in original).

There is no such evidence.  In fact, the available evidence based upon the medical records is that the carcinoma did not spread and that the removal of the cancer was successful.  There is nothing in the medical record to establish there was a detrimental effect of any delay.

Further, the plaintiff claims that the delay between the time he allegedly first reported the lesion in November of 2002 and the biopsy in September 2003 was caused by one or more of the defendants improperly diagnosing his

condition as "dry skin." (R.19,pp.5,6)  This is not a malpractice action, this is a claim under the Eighth Amendment for deliberate indifference.  Even if true, that the medical staff made an error in their assessment of the plaintiff's condition (an error which, if made at all, was later corrected) this does not evidence that the staff knew that there was of a serious risk to the plaintiff and deliberately ignored that risk.  A misdiagnosis by itself does not amount to the kind of deliberate indifference prohibited by the Eighth Amendment. *See Estelle*, 429 U.S. at 106; *Steele*, 82 F.3d at 178; *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998).

The plaintiff has sued a number of medical staff personnel.  Yet, he cannot show based on the record that any of these individual defendants were deliberately indifferent to his serious medical needs.  Viewing all facts in the light most favorable to the plaintiff, it may be argued that a mistake may have been made.  Although PA Jackson in November 2002, intended to schedule an outside consultation to rule out carcinoma, for unknown reasons, this was not done.  The consultation did not occur until September 2003.  At most, this oversight was negligence.  A mistake made in the course of medical treatment does not rise to the level of a violation of the plaintiff's Constitutional rights merely because the patient is a prisoner.  This is especially true in light of the fact that the plaintiff was a chronic care patient who frequently was seen by the medical staff regarding other ailments.  (Statement of Facts,¶¶4,33;App.10-59,134) *See*, *Gutierrez*, 111 F.3d at 1374-75 (isolated instances of neglect during an otherwise continuous ten-month stretch of adequate medical care did not give rise to an inference of deliberate indifference).

**D. Conclusion**

Based upon the above, defendants Gould and Samalio request that they be dismissed from this suit.  Further, all of the defendants request that this Court award summary judgment in their favor against the plaintiff.

Respectfully submitted,

RODGER A. HEATON
UNITED STATES ATTORNEY


/s/ Gerard A. Brost
Assistant United States Attorney
211 Fulton Street, Suite 400
Peoria, Illinois  61602
Telephone:  (309) 671-7050

## CERTIFICATE OF SERVICE

I hereby certify that on June 12, 2006, I electronically filed the foregoing Memorandum in Support with the Clerk of the Court using the CM/ECF system, and I hereby certify that a copy of the Memorandum has been made on the plaintiff by depositing a copy thereof in the United States mail, postage prepaid, addressed to:

Thomas Berchiolly
Reg. No. 98369-024
FPC Leavenworth
P.O. Box 1000
Leavenworth, KS 66048

/s/ Stephanie Pennington
Paralegal Specialist

15