E-FILED
Monday, 12 June, 2006 03:30:33 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
AT PEORIA

| | |
|---|---|
| THOMAS BERCHIOLLY,           )<br>                              )<br>    Plaintiff,                )<br>                              )<br>vs.                           )<br>                              )<br>EDDIE SOMOLIO[1], et al.,     )<br>                              )<br>    Defendants.               )  | No. 04-1318 |

### STATEMENT OF UNDISPUTED FACTS[2]

The defendants, pursuant to Rule 7.1(D) of the Local Rules of the United States District Court for the Central District of Illinois, hereby submit their Statement of Undisputed Facts in support of their Motion to Dismiss and/or for Summary Judgment which is filed herewith.

1. The plaintiff is a federal inmate currently confined at the Federal Prison Camp in Leavenworth, Kansas. (App.5) He was convicted in the Northern District of Illinois for conspiracy to distribute cocaine, and possession with intent to distribute cocaine, in violation of 21 U.S.C. § 846. (App.1,7) On August 30, 1994, he was sentenced to 188 months' imprisonment. (App.7,8) He is scheduled for a good conduct release on December 17, 2007. (App.7,8)

2. The plaintiff arrived at FCI Pekin on August 24, 1995. (App.5)

3. Defendant William Gould is a commissioned officer of the United States Public Health Service. (App.126) As an officer of the Public Health Service. Dr. Gould has been assigned to the Federal Correctional Institution in Pekin, Illinois,

---

[1] The correct spelling is Samalio.

[2] References to the Appendix of Defendants attached to this Statement of Undisputed Facts are to "App.___"; references to the plaintiff's Complaint are to "R.19,p.___."

as the Chief Pharmacist. (App.126)

4. Defendant Samalio was the Health Services Administrator at FCI Pekin, and was not a health care provider or responsible for providing medical treatment to the inmates at the institution and he did not provide medical care to the plaintiff. (App.128-129) Samalio was responsible for the administrative functions of the Health Services Unit. (App.128) In that capacity he was responsible for the housekeeping, sanitation, maintenance, personnel, budget, procurement and supply functions of the Unit. (App.128)

5. On or about October 22, 2002, the plaintiff noticed a growth on his forehead and submitted an inmate request to staff member requesting an appointment. (R.19,p.4;App.60) An appointment was scheduled,[3] and on November 6, 2002, the plaintiff was seen by Defendant Jackson for a complaint of a lesion at the edge of his scalp. (R.19,p.4;App.9,136) Defendant Jackson noted a slightly raised lesion, and indicated that basal cell carcinoma should be ruled out. (App.9,136) Defendant Jackson noted a plan to schedule an excisional biopsy, but for unknown reasons, the biopsy was not completed at that time. (App.9,136)

6. On July 7, 2003, the plaintiff filed an Inmate Request to Staff Member expressing his concerns about the growth on his face and concerns about his cholesterol medication, and asking to set up an appointment. (App.61,133,136)

7. On July 17, 2003, the plaintiff was seen in Health Services for knee pain, allergic rhinitis, and a lesion on his right temple. (App.21) The assessment was

---

[3]The date the appointment was scheduled may have been incorrectly reported as November 4, 2002, as the plaintiff was actually seen in Health Services on November 6, 2002.

2

knee pain, allergic rhinitis, and to rule out basal cell carcinoma. (App.21,133,137) The plan was to review the case with Dr. Ortiz for surgical excision, and the plaintiff was given prescriptions. (App.21,137)

    8. On July 18, 2003, the plaintiff talked to Defendant Ortiz about his knee problems and his skin problem. (App.22,133)

    9. On July 21, 2003, the Utilization Review Committee ("URC") recommended that the plaintiff undergo arthroscopic surgery for his knee problems. (App.23)

    10. On September 2, 2003, an Administrative Note was made by Dr. Ortiz regarding a small tumor on the right side of the plaintiff's forehead that had grown in size and was pending biopsy. Dr. Ortiz made a referral to a general surgeon to rule out basal cell carcinoma, and prescribed Benadryl and Motrin. (App.24,133)

    11. On September 11, 2003, the URC approved a biopsy. (App.64,65)

    12. On September 22, 2003, Defendant Ortiz talked to the plaintiff about his skin lesion and informed him it would be biopsied pending his surgical consultation scheduled for September 30, 2003. They also discussed the plaintiff's cholesterol and knee problems. (App.27,133)

    13. On September 30, 2003, the plaintiff was seen by Dr. Reid, a general surgeon, who recommended excision of the growth. (App.28,133)

    14. On October 29, 2003, the plaintiff filed an Inmate Request to Staff regarding the growth on his face. (App.66)

    15. On November 18, 2003, the plaintiff had the growth in his right temple excised. (App.31,67,68,133) The pathology report indicated invasive squamous

cell carcinoma, but noted that the lines of excision were negative for carcinoma which indicated that the entire cancerous area had been removed. (App.70,133-134)

16. On November 25, 2003, Dr. Reid stated no follow-up was necessary. (App.32,134)

17. On November 26, 2003, the sutures were removed and the wound was noted to be well-healed. The plaintiff was counseled regarding squamous cell carcinoma and was given a prescription for Tylenol. (App.32,134)

18. On December 8, 2003, the plaintiff submitted an Inmate Request to Staff Member to PA Hansen, complaining of dizziness and expressing a concern that it was associated with his skin lesion. (App.138,139)

19. On December 15, 2003, the plaintiff was seen by a physician for his dizziness. (App.138) The dizziness was not related to the carcinoma. (App.135)

20. On January 12, 2004, the plaintiff was seen by PA Hansen for complaints of a lesion to his right temple, similar to his previous lesion. The plaintiff stated that this lesion had increased in size and was tender and would bleed when washed. The plaintiff also complained of a rash to his thorax which cleared when he was taking Keflex. PA Hansen noted a slightly raised flesh-colored lesion measuring approximately 3 x 5 mm to the right lateral maxillary region. The assessment was rule out squamous cell carcinoma, and questioned whether it might be folliculitis. The plan was to seek a consultation with Dr. Reid and excise the lesion. The request for consultation was written the same day. (App.36,138)

21. On March 3, 2004, the plaintiff was evaluated by the consultant, Dr.

Sutherland. (App.134) Dr. Sutherland prescribed Efudex cream, an anti-cancer drug used to treat pre-cancerous and cancerous skin growths, also referred to as 5-FU cream, and explained the use and potential side effects of the Efudex cream to the plaintiff. (App.42,134) Dr. Sutherland asked to follow-up with the plaintiff in six weeks, after the cream treatment was completed. (App.42,134) On March 12, 2004, the URC approved the excision procedure. (App.42)

      22. On March 22, 2004, the plaintiff as seen for follow-up of the biopsy and for complaints of a rash to his back. PA Hansen noted crusting lesions to the bridge of the plaintiff's nose and above the plaintiff's right eyebrow.[4] The assessment was actinic keratoses, a precancerous skin condition that may change into a skin cancer if sun exposure continues, and folliculitis. The Efudex cream was continued. (App.43,139)

      23. On April 2, 2004, the plaintiff was counseled by PA Hansen regarding the Efudex cream. He was also scheduled to see the general surgeon. PA Hansen noted there were no longer any lesions on the plaintiff's face. (App.44,139)

      24. On May 5, 2004, the plaintiff was examined by Dr. Sutherland at Pekin Hospital. He noted that the plaintiff had been using the 5-FU cream and that no lesions were seen. Therefore, the surgical excision was cancelled. (App.134)

      25. On June 23, 2004, during a chronic care clinic visit, PA Hansen noted that no skin lesions were seen. (App.139)

      26. On September 30, 2004, the plaintiff was seen by PA Hansen. The

---

[4]Crusting is a normal reaction to Efudex cream. (App.139)

plaintiff complained of lesions to his face and penis. PA Hansen noted no significant lesions to the face, but found hyperpigmented flat macule to the shaft of the penis. The assessment was urinary tract infection, genital warts, and skin lesions. The plaintiff was given a prescription for Bactrin and Indicin, and he was directed to increase his fluid intake. PA Hansen noted that he would discuss the skin lesions with PA Jackson. (App.140)

27. On October 4, 2004, the plaintiff was again seen by PA Hansen. The assessment was prostatitis (inflammation of prostrate), nephorlithiasis (kidney stones), and a need to rule out Lupus. Bactrin was prescribed and tests ordered. (App.140)

28. On November 10, 2004, the plaintiff was transferred from FCI Pekin to another institution. (App.134,140)

29. In addition to the above-mentioned visits to Health Services and treatment provided to the plaintiff, the plaintiff was seen on a number of occasions by various health care professionals for a variety of other conditions. In 2002 he was seen on November 19 (right knee pain and medication refill); November 25 (medication refill); December 5 (right knee pain and swelling); December 10 (chronic care clinic); and December 23 (lab work). (App.10-13) In 2003, he was seen on January 6 (right knee pain); January 15 (medication refill); February 18 (right knee pain); March 4 (constipation and medication refill); March 20 (chronic care clinic); March 26 (physical examination); April 14 (lab work); April 23 (right knee pain); May 16 (contract optometrist); May 29 (contract dietician); June 10 (chronic care clinic); July 8 (lab work); July 29 (rash); August 19 (medication refill); September 9 (chronic care clinic); September 23

(medication refill); October 16 (lab work); October 21 (chills, dry mouth and spinning); October 22 (history and physical); November 10 (lab work); November 18 (vertigo and medication refill); December 12 (medication refill); and December 15 (vertigo and knee pain). (App.13-35)  In 2004, he was seen on January 5 (lab work); January 27 (right knee pain); February 20 (rash on back, athlete's foot and medication refill); March 1 (chronic care clinic); April 19 (lab work); April 27 (medication refill and knee pain); April 28 (knee pain); May 28 (itching on scalp and back); June 10 (medication refill); June 23 (chronic care clinic); June 29 (left shoulder pain); July 15 (left shoulder pain an d bumps on scalp); July 20 (left shoulder); July 26 (left shoulder and bumps on scalp); August 3 (x-ray); August 10 (sores on scalp); August 24 (right knee and left shoulder); September 14 (flank pain, chills, and frequent urination); September 15 (chronic care clinic); October 19 (left shoulder and right knee); and October 25 (lab work, left shoulder, and follow-up on urination issue). (App.35-59,134)

    Respectfully submitted,

    UNITED STATES OF AMERICA

    RODGER A. HEATON
    UNITED STATES ATTORNEY

    /s/ Gerard A. Brost
    Gerard A. Brost
    Assistant United States Attorney
    211 Fulton Street, Suite 400
    Peoria, IL 61602
    Telephone:  309/671-7050

## CERTIFICATE OF SERVICE

I hereby certify that on June 12, 2006, I electronically filed the foregoing Statement of Undisputed Facts and Appendix with the Clerk of the Court using the CM/ECF system, and I hereby certify that a copy of the Facts and Appendix has been made on the plaintiff by depositing a copy thereof in the United States mail, postage prepaid, addressed to:

Thomas Berchiolly
Reg. No. 98369-024
FPC Leavenworth
P.O. Box 1000
Leavenworth, KS 66048

/s/ Stephanie Pennington
Paralegal Specialist