UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
AT PEORIA

| | |
|---|---|
| THOMAS BERCHIOLLY, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Case No. 04-1318 |
| ASHCROFT, ET AL., | ) ) ) |
| Defendants. | ) |

### DECLARATION OF CAPTAIN WILLIAM GOULD

I, William Gould, do hereby certify, declare, and state as follows:

1.  I currently serve as a commissioned officer of the U.S. Public Heath Service (hereafter P.H.S.). The P.H.S. is one of the seven uniformed services of the United States and is led by the Surgeon General. As a part of the Department of Health and Human Services, the mission of the P.H.S. is to protect, promote, and advance the health and safety of the nation. Health professional employed by the P.H.S. can be assigned to federal, state, or local agencies or international organizations.

2.  I have attained the rank of Captain and have served with P.H.S. since November 1986. Pursuant to 18 U.S.C. § 4005, I am currently detailed to work as the Chief Pharmacist at the Federal Correctional Institution at Pekin, Illinois. I have served in this capacity, on an continual basis, since April 1995.

3.  I have no recollection of any conversation with Dr. Angel Ortiz in July of 03 as alleged. I did not joke with Dr. Ortiz about Inmate Berchiolly's condition. I do remember knocking and entering PA Hansen's office, sometime in 2002, when I was collecting patient charts

126

Declaration of Captain William Gould
Page 2

    to fill prescriptions. Inmate Berchiolly was in the room at the time and PA Hansen asked me what I thought of the lesion on the side of Berchiolly's head (roughly between his eye and ear in the temple area). I indicated that I thought it looked like dry skin and that maybe some lotion would help. I then left with the charts and went back to the Pharmacy.

4.    A week or so later, Berchiolly told me that the lesion had not gotten better, but has increased in size. I instructed Berchiolly to return to sick call and see the PA as soon as possible. I told him that it probably was not dry skin and could be cancer.

5.    I dispensed variety of medications which were prescribed by various heath care providers. I did have other conversations with Berchiolly regarding the lesion on his face. Each time I referred him to sick call to see a provider. At no time did I make any clinical treatment decisions regarding care of the patient.

I declare, under penalty of perjury, pursuant to 28 U.S.C. §1746, that the foregoing is true and correct.

Executed this __18__ day of May 2006.

                                                 Capt. William Gould
                                                 U.S. Public Health Service
                                                 Chief Pharmacist
                                                 Federal Correctional Institution
                                                 Pekin, Illinois

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
AT PEORIA

| | |
|---|---|
| THOMAS BERCHIOLLY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 04-1318 |
| | ) |
| ASHCROFT, ET AL, | ) |
| | ) |
| Defendants. | ) |

### DECLARATION OF FERDINAND SAMALIO

I, Ferdinand Samalio, do hereby certify, declare, and state as follows:

1. I am employed by the United States Department of Justice, Federal Bureau of Prisons (BOP), as the Health Services Administrator at the Federal Correctional Institution in Pekin, Illinois (FCI Pekin). I have held this position since September 1995. In my position, I am responsible for the administrative functions of the Health Services Unit. Specifically, I am responsible for the housekeeping, sanitation, maintenance, personnel, budget, procurement, and supply functions of the unit.

2. In my position, I have access to medical records for inmates incarcerated with the BOP. I have true and correct copies of records from the medical file of Thomas Berchiolly, Register Number 98369-024. These records are kept in the regular course of business of the BOP.

3. I am not responsible for the clinical care and treatment of inmates confined at FCI Pekin. That responsibility lies with the Clinical Director, whom I do not supervise. Although I am a foreign medical graduate and worked as a Physician's Assistant, I am not authorized

128

Declaration of Ferdinand Samalio
Page 2

to see patients in a clinical role because I do not maintain privileges with the BOP to practice in that capacity. While he was incarcerated at FCI Pekin, I did not see Thomas Berchiolly in a clinical role. At no time did I medically assess Mr. Berchiolly or provide any medical treatment to him.

4. Although I do not specifically recall, I probably spoke with Berchiolly on several occasions regarding the treatment for the lesion on his face.

5. When a consultation is requested by a health care provider, he/she is to complete a Consultation Sheet. The completed Consultation Sheet is forwarded to the Clinical Director for review and signature. After signature, a Medical Records Technician (hereafter "MRT") will ensure that it is reviewed by the Utilization Review Committee (hereafter "URC"). If approved, the MRT will ensure that the appointment is scheduled.

6. It appears that during an examination of Berchiolly on November 6, 2002, PA Hansen indicated that an excisional biopsy was needed to rule out carcinoma. For an unknown reason, this biopsy was not immediately scheduled. It appears that the consultation sheet was either not completed or was misplaced. Berchiolly did not mention the lesion again until July 2003, when he submitted a request for an appointment. A request for consultation was completed in September 2003, which was approved by the URC and a biopsy was conducted on November 18, 2003.

7. On October 31, 2003, I replied to correspondence received from Berchiolly in which he expressed his belief that Dr. Ortiz, Ms. Gregory, and myself had been deliberately indifferent to a growth on his face and to a torn tendon in his knee. In my response, I

129

Declaration of Ferdinand Samalio
Page 3

informed Berchiolly that surgical intervention had been planned by an outside surgeon and that there had been no deliberate indifference to his medical needs. In fact, Berchiolly had been seen on September 30, 2003, by a contract physician who recommended surgical excision which was later performed.

8. On October 8, 2004, Berchiolly submitted correspondence to me in which he expressed his frustration at trying to be seen and treated for his skin cancer. I did not provide a written response.

9. In my role as the Health Services Administrator, I supervise William Gould, the Chief Pharmacist. Mr. Gould is an employee of the Public Heath Service and since April 1995, has been assigned to FCI Pekin. It is within the scope of his employment to pick up medical charts from examination rooms so that he can fill the prescriptions which have been ordered by the health care providers. His duties also include communication with health care providers regarding safe and effective uses of medications. It is not improper for health care providers to ask his opinion on a health care issue, based upon his education and experience. Thus, Mr. Gould would have been acting within the scope of his employment as the Chief Pharmacist when, after being asked by a heath care provider for his opinion, he suggested lotion for an area of dry skin on Berchiolly's face.

I declare, under penalty of perjury, pursuant to 28 U.S.C. §1746, that the foregoing is true and correct.

Executed this 25th day of May 2006.

Declaration of Ferdinand Samalio
Page 4

                                        *[signature]*
Ferdinand Samalio, Heath Services Admin.
Federal Correctional Institution
2600 South Second Street
Pekin, IL 61555-7000
309-346-8588

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
AT PEORIA

| | |
|---|---|
| THOMAS BERCHIOLLY, | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 04-1318 |
| ASHCROFT, ET AL, | ) |
| Defendants. | ) |

## DECLARATION OF ANGEL ORTIZ, M.D.

I, Angel Ortiz, do hereby certify, declare, and state as follows:

1. I am presently employed as a Staff Physician with the Federal Bureau of Prisons (hereafter BOP) at the Federal Correctional Institution in Tallahassee, Florida. I have held this position since March 2006. From April 2002, to November 2003, and January 2005, to March 2006, I was employed as the Clinical Director at the Federal Correctional Institution in Pekin Illinois (hereafter FCI Pekin). I am a licensed physician in the Commonwealth of Puerto Rico.

2. As Clinical Director, I have overall responsibility for the delivery of clinical care to inmates incarcerated at the institution. In my position with the BOP, I have access to records of inmates. These records include medical records and other hardcopy and electronic records. Thomas Berchiolly, Register Number 98369-024 was incarcerated at FCI Pekin from August 24, 1995, to November 10, 2004. I have reviewed the medical records for Mr. Berchiolly and have determined the following:

3. Berchiolly was first seen by medical staff for a spot on his right temple on November 6,

132

2002. Berchiolly was evaluated by Physicians Assistant Jackson who wanted to rule out skin cancer by an excisional biopsy.

4. It is unclear from the record why a biopsy was not scheduled at that time. The standard procedure was for the PA making the recommendation to initiate a request for consultation. I would then review the request and sign. A medical records technician would then walk it through the process of being presented to the Utilization Review Committee (URC). If approved by the URC, the consultation would be scheduled by the Medical Records Technician.

5. Berchiolly was next seen for this spot on July 17, 2003. He was again evaluated by PA Jackson, who again wanted to rule out skin cancer. PA Jackson indicated an intention to speak with me about the matter. I spoke with Berchiolly on July 18, 2003, about issues related to his knee condition, but Berchiolly also mentioned a skin rash. On July 29, 2003, Benadryl was ordered for a skin rash. On September 2, 2003, I noted in the medical record a small tumoration on Berchiolly's right forehead, which was pending biopsy. I wrote a referral to a general surgeon. I spoke with Berciolly again on September 22, 2003 and informed him that it would be biopsied and he would be seen by a general surgeon soon. This was the end of my personal involvement in the case as I transferred to another location and did not return to FCI Pekin until after Berchiolly has transferred away from FCI Pekin.

6. My review of the medical records further reveals that Berchiolly was seen by Dr. Reid (the general surgeon) on September 30, 2003. Dr. Reid recommended excision of the right temple nodule. This surgical excision was conducted on November 18, 2003. The pathology report indicated that the spot was squamous cell carcinoma. The pathology

133

also noted that the lines of excision were negative which indicates that the entire cancerous area was removed. Dr. Reid indicated that no further follow-up with him was needed. The sutures from the excision were removed on November 26, 2003 and the wound was noted as healing well. In December 2003, Berchiolly was treated with antibiotics for potential infection at the suture site.

7. In January 2004, Berchiolly was seen by PA Hansen with a complaint about a lesion on the right temple area. PA Hansen wanted to rule out skin cancer and recommended Berchiolly have an outside consultation for the condition. A request for consultation was written that day. Berchiolly was seen by Dr. Sutherland on March 3, 2004. He recommended Efudex cream (also referred to as 5-FU cream, it is an anti-cancer drug used to treat pre-cancerous and cancerous skin growth), with a follow-up in 6 weeks. The follow-up with Dr. Sutherland occurred on May 5, 2004. Dr. Sutherland noted no lesions were seen and cancelled the previously recommended surgical excision. Berchiolly continued to be monitored until his transfer from FCI Pekin on November 10, 2004.

8. In addition to the occasions mentioned above, Berchiolly was seen by a variety of health care professionals for other conditions on many other occasions. In 2002, he was seen on November 19, December 5, 10, and 23. In 2003, he was seen on January 6 and 18, March 4, 20, 26 and 28, April 14, 18, and 23, May 16, and 29, June 2 and 10, July 8, September 9, October 16, 21, and 22, November 10, December 1, 2, and 15. In 2004, he was seen on January 5, 9, and 27, February 20, March 1, April 27 and 28, May 28, , June 23 and 29, July 15, 20, and 26, August 3, 10, and 24. September 14, 15, 28, and 30, October 4, 19, 25, and 29.

9. Even if any delay in treatment occurred, it did not have any negative clinical effect.

134

Squamous cell carcinoma is the second most common form of skin cancer. While it can eventually penetrate to underlying tissues, it is rare that it spreads to distant tissues and organs. It is only if this happens, that squamous cell carcinoma is fatal. There is no indication that the squamous cell carcinoma found on Berchiolly's forehead spread to any other areas. The removal successful as evidenced by the pathology report.

10. The dizziness complained of by Berchiolly could not have been caused by the squamous cell carcinoma. The scar complained of by Berchiolly is small and is an expected result of surgical excision. Berchiolly's condition was treated properly. At no time did I try to prevent or delay Berchiolly from receiving a biopsy or any other treatment for his condition.

I declare, under penalty of perjury, pursuant to 28 U.S.C. §1746, that the foregoing is true and correct.

Executed this 25 day of May 2006.

Angel Ortiz, M.D.
Staff Physician
Federal Correctional Institution
Tallahassee, Florida

135

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
AT PEORIA

| | |
|---|---|
| THOMAS BERCHIOLLY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 04-1318 |
| ) | |
| ASHCROFT, ET AL, ) | |
| ) | |
| Defendants. ) | |

### DECLARATION OF ROBERT JACKSON

I, Robert Jackson, do hereby certify, declare, and state as follows:

1. I am currently employed as Physician's Assistant (hereafter "PA") by the Federal Bureau of Prisons (hereafter "BOP") and am assigned to the Federal Correctional Institution in Pekin, Illinois (hereafter "FCI Pekin"). I have served in this position since October 1994.

2. During 2002, Berchiolly was not on my case load. However, I was the only Physician's Assistant authorized to do skin biopsies at FCI Pekin. For that reason, after Berchiolly requested to be seen for a growth on his forehead, an appointment was scheduled for him to see me. I examined Berchiolly on November 6, 2002. I noted an irregular, slightly raised lesion on his forehead. I have no independent recollection of what my impression was, however, in the medical record I noted that I wanted to rule out basal cell carcinoma by scheduling Berchiolly for an excisional biopsy. I was not authorized to do biopsies in cosmetically sensitive areas (like the face) and so I was unable to complete the biopsy.

3. Although I do not specifically recall what happened on this occasion, normally, I would fill out portions of a request for consultation. The request would then be reviewed by the

136

Clinical Director who would sign if he believed it was the proper course of action. The form would then be considered by the Utilization Review Committee, and if approved would be scheduled. A medical records technician is the person who would walk this through the process after the request is signed by the Clinical Director. I do not know why the consultation was not scheduled at that time. I did nothing to prevent or delay it. I do not recall speaking to Dr. Ortiz or Mr. Samalio about Berchiolly's condition at that time.

4. On July 7, 2003, I received a copout from Berchiolly expressing concern about growth of the area on his forehead. As a result, I examined Berchiolly again on July 17, 2003. I again noted the lesion and wanted to rule out basal cell carcinoma. I consulted with Dr. Ortiz at that time to discuss possible surgical excision.

4. I had no further involvement with Berchiolly and the condition on his right temple. At no time did I delay or prevent treatment for the condition on Berchiolly's right temple.

I declare, under penalty of perjury, pursuant to 28 U.S.C. §1746, that the foregoing is true and correct.

Executed this ____ day of May 2006.

_____
Robert Jackson, Physician's Assistant
Federal Correctional Institution
Pekin, Illinois

5-22-06

137

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
AT PEORIA

| | |
|---|---|
| THOMAS BERCHIOLLY, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 04-1318 |
| ASHCROFT, ET AL, | ) ) ) |
| Defendants. | ) |

### DECLARATION OF OTTO HANSEN

I, Otto Hansen, do hereby certify, declare, and state as follows:

1. I am currently employed as Physician's Assistant (hereafter "PA") by the Federal Bureau of Prisons (hereafter "BOP") and am assigned to the Federal Correctional Institution in Bennettsville, South Carolina. From June 2002 to November 2005, I served as a PA at the Federal Correctional Institution in Pekin, Illinois.

2. My first contact with inmate Berchiolly related to the lesion on his face was on November 26, 2003. I removed 6 sutures, counseled him on squamous cell carcinoma, and prescribed Tylenol. I noted that the wound was well healed.

3. On December 8, 2003, Berchiolly submitted an Inmate Request to Staff Member[1] to me in which he complained of dizziness and expressed concern that it could be related to a lesion which had been excised from his forehead. My response on December 24, 2003, indicated that he had been treated by the physician on December 15, 2003 for the dizziness complaint and if he had further concerns that he should sign up for sick call.

---

[1] Commonly referred to as a "cop-out."

Declaration of Otto Hansen
Page 2

The medical records reflect that during this time, Berchiolly was seen for medication refill on December 12, 2003, and was seen by a physician for the dizziness complaint on December 15, 2003.

4. On January 12, 2004, I examined Berchiolly. He presented with a complaint of new lesions to his right temple. Berchiolly indicated that they increased three times in size in the last 3 months and that they were tender and occasionally bled when he washed. Berchiolly also complained of a rash to his thorax which cleared when he was taking Keflex. I noted a slightly raised flesh colored lesion measuring approximately 3x5 mm. to the right lateral maxillary region. I noted a need to rule out squamous cell carcinoma and to consider possible folliculitis. My plan was for a consultation with Dr. Reid for a biopsy. A consultation request was written the same day.

5. After Berchiolly had been seen by a consultant for his condition, and being prescribed Efudex cream, I again saw Berchiolly on March 22, 2004, for follow-up. Berchiolly also complained of a rash to his back. I noted crusting lesions on the bridge of the nose & above the right eyebrow (which is a normal reaction to the Efudex cream). My assessment was actinic keratoses (a precancerous skin condition that may change into a skin cancer if sun exposure continues). I continued Berchiolly on the Efudex cream.

6. On April 2, 2004, I counseled Berchiolly on the effects of the Efudex cream and informed him that he would be seeing the surgeon. On June 23, 2004, I saw Berchiolly in the Chronic Care Clinic. At that time, I noted that there were no lesions on his face.

7. The next time that I saw Berchiolly for issues related to the skin lesion was on September

139

Declaration of Otto Hansen
Page 3

    30, 2004. He complained of lesions to his face and penis, kidney stones, and bumps to his scalp. I noted no significant lesions to his face but did note a hyperpigmented flat macule to the shaft of this penis. My assessment was a urinary tract infection for which I prescribed Bactrim, genital warts and skin lesions, for which I prescribed Indocin, an anti-inflammatory. I recommended increased fluids

8. I again saw Berchiolly on October 4, 2004 as a follow-up after having spoken to PA Jackson & Mr. Samalio about the skin lesion. Berchiolly indicated improvement of the urinary tract infection with the Bactrim. My assessment was prostatitis (inflamation of the prostrate), nephrolithiasis (kidney stones) and a need to rule out Lupus. I prescribed Bactrim and ordered laboratory tests.

9. Berchiolly transferred away from FCI Pekin on November 10, 2004, and I had no further involvement in the treatment of lesions on his forehead.

I declare, under penalty of perjury, pursuant to 28 U.S.C. §1746, that the foregoing is true and correct.

Executed this __4__ day of June 2006.

                                                        _Otto Harris Hansen_ PA-c
                                                        Otto Hansen, Physician's Assistant
                                                        Federal Correctional Institution
                                                        Bennettsville, South Carolina