UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
AT PEORIA

| | |
|---|---|
| THOMAS BERCHIOLLY, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Case No. 04-1318 |
| ASHCROFT, ET AL, | ) ) ) |
| Defendants. | ) ) |

## DECLARATION OF ANGEL ORTIZ, M.D.

I, Angel Ortiz, do hereby certify, declare, and state as follows:

1. I am presently employed as a Staff Physician with the Federal Bureau of Prisons (hereafter BOP) at the Federal Correctional Institution in Tallahassee, Florida. I have held this position since March 2006. From April 2002, to November 2003, and January 2005, to March 2006, I was employed as the Clinical Director at the Federal Correctional Institution in Pekin Illinois (hereafter FCI Pekin). I am a licensed physician in the Commonwealth of Puerto Rico.

2. As Clinical Director, I have overall responsibility for the delivery of clinical care to inmates incarcerated at the institution. In my position with the BOP, I have access to records of inmates. These records include medical records and other hardcopy and electronic records. Thomas Berchiolly, Register Number 98369-024 was incarcerated at FCI Pekin from August 24, 1995, to November 10, 2004. I have reviewed the medical records for Mr. Berchiolly and have determined the following:

3. Berchiolly was first seen by medical staff for a spot on his right temple on November 6,

**132**

2002. Berchiolly was evaluated by Physicians Assistant Jackson who wanted to rule out skin cancer by an excisional biopsy.

4. It is unclear from the record why a biopsy was not scheduled at that time. The standard procedure was for the PA making the recommendation to initiate a request for consultation. I would then review the request and sign. A medical records technician would then walk it through the process of being presented to the Utilization Review Committee (URC). If approved by the URC, the consultation would be scheduled by the Medical Records Technician.

5. Berchiolly was next seen for this spot on July 17, 2003. He was again evaluated by PA Jackson, who again wanted to rule out skin cancer. PA Jackson indicated an intention to speak with me about the matter. I spoke with Berchiolly on July 18, 2003, about issues related to his knee condition, but Berchiolly also mentioned a skin rash. On July 29, 2003, Benadryl was ordered for a skin rash. On September 2, 2003, I noted in the medical record a small tumoration on Berchiolly's right forehead, which was pending biopsy. I wrote a referral to a general surgeon. I spoke with Berciolly again on September 22, 2003 and informed him that it would be biopsied and he would be seen by a general surgeon soon. This was the end of my personal involvement in the case as I transferred to another location and did not return to FCI Pekin until after Berchiolly has transferred away from FCI Pekin.

6. My review of the medical records further reveals that Berchiolly was seen by Dr. Reid (the general surgeon) on September 30, 2003. Dr. Reid recommended excision of the right temple nodule. This surgical excision was conducted on November 18, 2003. The pathology report indicated that the spot was squamous cell carcinoma. The pathology

133

also noted that the lines of excision were negative which indicates that the entire cancerous area was removed. Dr. Reid indicated that no further follow-up with him was needed. The sutures from the excision were removed on November 26, 2003 and the wound was noted as healing well. In December 2003, Berchiolly was treated with antibiotics for potential infection at the suture site.

7. In January 2004, Berchiolly was seen by PA Hansen with a complaint about a lesion on the right temple area. PA Hansen wanted to rule out skin cancer and recommended Berchiolly have an outside consultation for the condition. A request for consultation was written that day. Berchiolly was seen by Dr. Sutherland on March 3, 2004. He recommended Efudex cream (also referred to as 5-FU cream, it is an anti-cancer drug used to treat pre-cancerous and cancerous skin growth), with a follow-up in 6 weeks. The follow-up with Dr. Sutherland occurred on May 5, 2004. Dr. Sutherland noted no lesions were seen and cancelled the previously recommended surgical excision. Berchiolly continued to be monitored until his transfer from FCI Pekin on November 10, 2004.

8. In addition to the occasions mentioned above, Berchiolly was seen by a variety of health care professionals for other conditions on numerous occasions. The medical records reflect that in 2002, Berchiolly was seen on November 19 (right knee pain and medication refill), November 25 (medication refill), December 5 (right knee pain & swelling), December 10 (chronic care clinic), and December 23 (lab work). In 2003, he was seen on January 6 (right knee pain), January 15 (medication refill), February 18 (right knee pain), March 4 (constipation & medication refill), March 20 (chronic care clinic), March 26 (physical examination), April 14 (lab work), April 23 (right knee pain), May 16 (contract optometrist), May 29 (contract dietician), June 10 (chronic care clinic), July 8 (lab work),

134

July 29 (rash), August 19 (medication refill), September 9 (chronic care clinic), September 23 (medication refill), October 16 (lab work), October 21 (chills, dry mouth & spinning), October 22 (history & physical), November 10 (lab work), November 18 (vertigo and medication refill), December 12 (medication refill), and December 15 (vertigo & knee pain).  In 2004, he was seen on January 5 (lab work), January 27 (right knee pain), February 20 (rash on back, athlete's foot, and medication refill), March 1 (chronic care clinic), April 19 (lab work), April 27 (mediation refill and knee pain), April 28 (knee pain), May 28 (itching on scalp and back), June 10 (medication refill), June 23 (chronic care clinic), June 29 (left shoulder pain), July 15 (left shoulder pain and bumps on scalp), July 20 (left shoulder), July 26 (left shoulder and bumps on scalp), August 3 (x-ray), August 10 (sores on scalp), August 24 (right knee & left shoulder), September 14 (flank pain, chills, and frequent urination), September 15 (chronic care clinic), October 19 (left shoulder & right knee), and October 25 (lab work, left shoulder, and follow-up on urination issue).

9. Even if any delay in treatment occurred, it did not have any negative clinical effect. Squamous cell carcinoma is the second most common form of skin cancer.  While it can eventually penetrate to underlying tissues, it is rare that it spreads to distant tissues and organs.  It is only if this happens, that squamous cell carcinoma is fatal.  There is no indication that the squamous cell carcinoma found on Berchiolly's forehead spread to any other areas.  The removal successful as evidenced by the pathology report.

10. The dizziness complained of by Berchiolly could not have been caused by the squamous cell carcinoma.  The scar complained of by Berchiolly is small and is an expected result of surgical excision.  Berchiolly's condition was treated properly.  At no time did I try to

135a

prevent or delay Berchiolly from receiving a biopsy or any other treatment for his condition.

I declare, under penalty of perjury, pursuant to 28 U.S.C. §1746, that the foregoing is true and correct.

Executed this 30 day of May 2006.

Angel Ortiz, M.D.
Staff Physician
Federal Correctional Institution
Tallahassee, Florida

**135b**