E-FILED
Wednesday, 02 August, 2006 01:34:17 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

FILED
AUG 2 - 2006
JOHN M. WATERS, Clerk
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

)
)
)
)
THOMAS A. BERCHIOLLY,            )
  Plaintiff,                     )
)
)                    04-1318
Vs.                              )
)
)
Ashcroft, et al.,               )
  Defendants.                    )
_____ )

**PLAINTIFF'S AFFIDAVIT IN OPPOSITION
TO THE DEFENDANTS' MOTION FOR SUMMARY JUDGEMENT**

**Now Comes,** Thomas A. Berchiolly, the plaintiff, acting pro
se in the above entitled case, and offers this Affidavit in
Opposition to the Defendants' Motion for Summary of Judgement,
through which Plaintiff will show this Honorable Court that
the Defendants have made numerous misstatements and misleading
references.  The defendants claimed in their motion that there
were no material facts in dispute.  In reality, there are many
in dispute:

1.   Plaintiff agrees that he is a federal inmate currently

-1-

confined at the Federal Prison Camp in Leavenworth, Kansas. Plaintiff agrees that, he was convicted in the Northern District of Illinois for conspiracy to distribute cocaine, and possession with intent to distribute cocaine, and he further agrees that he was sentenced to 188 months' imprisonment.

2.    Plaintiff agrees that he arrived at FCI Pekin on August 24, 1995.

3.    Plaintiff agrees that, defendant William Gould is a commissioned officer of the United States Public Health Service, and that he has been assigned to the Federal Correction Institution in Pekin, Illinois, as the Chief Pharmacist.

4.    Plaintiff agrees that, defendant Samalio was the Health Service Administrator at FCI Pekin, Illinois. However, plaintiff disagrees that, defendant Samalion was not a care provider or responsible for providing medical care to plaintiff. Defendant Samalio was part of the Health Care, in fact, he examined plaintiff, and gave he his professional opinion about plaintiff's affected are. (See Exhibit **B**, attached hereto and incorporated herein for reference). Furthermore, Exhibit **I**, indicates that defendant Samalio was involved in the decision making as to what, when, and if ever

-2-

plaintiff was to receive medical treatment. In fact, plaintiff addressed a BP-S148.055 (Inmate Request to Staff Member), to defendant Ortiz, but it was defendant Samalio who answered it. (Exhibit **E**). Moreover, defendant Samalio was one of the many officials that threatened plaintiff about placing him in the Segregation Unit (the Hole), if he did not refrain from seeking medical treatment.

5. Plaintiff agrees that on October 22, 2002, he submitted an inmate request to staff member requesting an appointment. Plaintiff agrees that on November 6, 2002, he was seen by defendant Jackson who noted the affected area who wanted to rule out skin cancer by an excisional biopsy. Plaintiff agrees that defendant Jackson noted a plan to schedule an excisional biopsy. However, plaintiff disagrees about the reason given for not preforming the necessary excisonal biopsy (for unknown reasons). This delay was occasioned by deliberate indifference.

6. Plaintiff agrees that on July 7, 2003, he filed an Inmate Request to Staff Member expressing his concerns about the growth on his face and concerns about his cholesterol medication, and asking to set up an appointment.

7. Plaintiff agrees that on July 17, 2003, he was seen by

-3-

Health Service for knee pain, allergic rhinitis, and a lesion on his right temple. Plaintiff agrees that the assessment was knee pain, allergic rhinitis, and to rule out cell carcinoma. He also agrees that the plan was to review the case with defendant Ortiz, and that he was given prescriptions for skin rash. It should be noted that, defendant Jackson again wanted to rule out skin cancer by an excisional biopsy. However, again it was further delayed. This delay too, was occasioned by deliberate indifference.

8. Plaintiff agrees that on July 18, 2003, he talked to defendant Ortiz about his knee problems and his skin problem.

9. Plaintiff stipulates that on July 21, 2003, the Utilization Review Committee recommended that he undergo arthroscopic surgery for his knee problems.

10. Plaintiff agrees that on September 2, 2003, an Administrative Note was made by defendant Ortiz regarding a small tumor on the right side of the plaintiff's forehead that had grown in size. Plaintiff stipulates to the medication, Benadryl for skin rash, and Motrin for minor pains. However, plaintiff disagrees about a biopsy being pending. Plaintiff also disagrees about defendant Ortiz making a referral to a general surgeon to rule out basal cell carcinoma at this time.

-4-

It should be noted that a biopsy was never done in plaintiff's person.    It was preformed in the removed tumor after the operation, which was done almost three months later.

11.    Plaintiff  agrees  that  on  September  11,  2003,  the Utilization Review Committe approved the biopsy.   It should be noted that the biopsy was done after the removal of the tumor.

12.    Plaintiff agrees that on September 22, 2003, defendant Ortiz talked to him about his skin lesion and informed him that it would be biopsied pending his surgical consultation scheduled for September 30, 2003.   Plaintiff also agrees that defendant Ortiz and him discussed his cholesterol and knee problems.

13.    Plaintiff agrees that on September 30, 2003, he was seen by Doctor Reid, a general surgeon, who recommended excision of the growth (The tumor).

14.    Plaintiff agrees that on October 29, 2003, he filed one of the many Inmate Request to Staff regarding the growth on his face.

15.    Plaintiff agrees that on November 18, 2003, he finally had the growth in his right temple excised (removed).   He also

-5-

agrees that the pathology report indicated invasive squamous cell carcinoma (Cancer). Plaintiff stipulates that the lines of excision were negative for carcinoma which indicated that the entire cancerous area had been removed. It should be noted, that plaintiff's face is currently displaying small tumors, similar as to the one removed.

16.    Plaintiff agrees that on November 25, 2003, Doctor Reid stated that no follow-up was necessary.

17.    Plaintiff agrees that on November 26, 2003, the sutures were removed and that the wound was noted to be well-healed. He also agrees that he was given Tylenol for pain. However, he disagrees about being counseled regarding squamous cell carcinoma.

18.    Plaintiff agrees that on December 8, 2003, he submitted an Inmate Request to Staff Member to defendant Hansen, complaining of dizziness and expressing a concern that it was associated with his skin lesion.

19.    Plaintiff agrees that on December 15, 2003, he was seen by a physician for his dizziness. Plaintiff stipulates to the dizziness not being related to the carcinoma.

**20.**  Plaintiff agrees that on January 12, 2004, he was seen by defendant Hansen for complaints of a lesion to his right temple, similar to his previous lesion.  He also agrees that he stated that this lesion had increased in size and was tender and would bleed when washed.  Plaintiff further agrees that he complained of a rash to his thorax which cleared when he was taking Keflex.  Plaintiff agrees that defendant Hansen noted a slightly raised flesh-colored lesion measuring approximately 3 x 5 mm to the right lateral maxillary region. Plaintiff stipulates that the assessment was to rule out squamous cell carcinoma, and questioned whether it might be folliculitis.  Plaintiff agrees that the plan was to seek a consultation with Doctor Reid and excise the lesion. Plaintiff also agrees that the consultation was written the same day.

**21.**  Plaintiff agrees that on March 3, 2004, he was evaluated by the consultant, Doctor Sutherland.  Plaintiff also agrees that Doctor Sutherland prescribed Efudex cream, an anti-cancer drug used to treat pre-cancerous and cancerous skin growths, also referred to as 5-FU cream.  Plaintiff agrees that Doctor Sutherland explained him the use and potential side effects of the Efudex cream.  Plaintiff further agrees that Doctor Sutherland asked to follow-up with him in six weeks, after the cream treatment was completed.

22. Plaintiff agrees that on March 22, 2004, he was seen for follow-up of the biopsy and for complaints of a rash to his back. Plaintiff also agrees that defendant Hansen noted crusting lesions to the bridge of his nose and above his right eyebrow. Plaintiff further agrees that the assessment was actinic keratoses, a precancerous skin condition that may change into skin cancer if sun exposure continues, and folliculitis. Plaintiff agrees that Efudex cream was continued.

23. Plaintiff agrees that on April 2, 2004, he was counseled by defendant Hansen regarding the Efudex cream. Plaintiff disagrees that defendant Hansen noted there were no longer lesions on his face. Plaintiff agrees that he was scheduled to see the general surgeon.

24. Plaintiff agrees that on May 5, 2004, he was examined by Doctor Sutherland at Pakin Hospital. Plaintiff also agrees that Doctor Sutherland noted that he had been using the 5-FU cream. However, plaintiff disagrees that no lesions were seen. At that time plaintiff's face displayed several lesions. Plaintiff agrees that the surgical excision was cancelled.

25. Plaintiff agrees that on June 23, 2004, he was seen by

defendant Hansen during a chronic care visit.    However, he disagrees that no skin lesions were seen.    It should be noted that plaintiff face currently displays small skin lesions.

**26.**  Plaintiff agrees that on September 30, 2004, he was seen by defendant Hansen.  Plaintiff also agrees that he complained of lesion to his face and penis.  Plaintiff disagrees that defendant Hansen noted no significant lesions to his face. Plaintiff agrees that defendant Hansen found hyperpigmented flat macule to the shaft of his penis.  Plaintiff further agrees that he was given a prescription for Bactrin and Indicin, and that he was directed to increase his fluid intake.

**27.**  Plaintiff agrees that on October 4, 2004, he was seen by defendant Hansen, and that the assessment was prostatitis (inflammation of prostrate), nephorlithiasis (Kidney stones), and that a need to rule out Lupus.  Plaintiff also agrees that Vactrin was prescribed and tests ordered.

**28.**  Plaintiff agrees that on November 10, 2004, he was transferred from FCI Pekin to another institution.

**29.**  Plaintiff stipulates that he was seen by medical personnel at FCI Pikin for a variety of other conditions

unrelated to the skin cancer in question.

The defendants claimed that they provided plaintiff with proper and prompt medical care. However, the evidence shows that there was a **delay of 13 months,** between the initial examination of the tumor and the actual removal of the tumor. The initial examination was on October 22, 2002, and the tumor was removed on November 18, 2003. This delay was occasioned by deliberate indifference. Furthermore, some of the defendants threatened the plaintiff with placing him in the Segregation Unit (The Hole), if he did not stop complaining about his cancerous tumor. Plaintiff should have been provided with a prompt Biopsy followed by the immediate removal of the cancerous tumor when he first addressed his medical concerns to the defendants. As a result of the defendants' indifference towards the plaintiff, he suffered unnecessary anguish and facial disfiguration. (Exhibit **A**).

These factual disputes cannot be resolved without a trial. Wherefore, defendants' motion for summary judgement should be denied.

Pursuant to title 28 U.S. §1746(a)., I, Thomas A. Berchiolly, declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct.

Executed on this $28$ day of July, 2006.

*Thomas Berchiolly*

Thomas A Berchiolly, pro se
Reg. No.98369-024
Federal Prison Camp
P.O. Box 1000
Leavenworth, Kansas 66048

-11-

## CERTIFICATE OF SERVICE

I, Thomas A Berchiolly, swear under penalty of perjury that the original and one (1) copy of the foregoing Affidavit in Opposition to the "Defendants' Motion for Summary Judgment," are being sent to the Clerk of the District Court of Illinois. That I have also sent one (1) additional copy of the above mentioned document(s) to the Assistant of the United States Attorney.  These document(s) are being placed in the United States, first-class Mail, postage prepaid, on this 28th day of July, 2006.

Pursuant to Rule 25(c) of the Federal Rules of Civil Procedure, said document(s) is deemed filed at the time it is delivered to prison authorities for forwarding Houston v. Lack, 487 U.S. 266 (1988), upon inmate Berchiolly placing same in a sealed, postage prepaid envelope addressed to:

U.S. District Court                    Assistant U.S. Attorney
Central Dist. of Il.,                  Gerard A. Brost
Office of the Clerk                    211 Fulton Street
Room 309                               Suite 400
Federal Building                       Peoria, Illinois 61602
100 N.E. Monroe
Peoria, Illinois 61602

and depositing same in the United States Postal Mail at the Federal Prison Camp, Leavenworth, Kansas 66048, on this 28th day of July, 2006.

Respectfully Submitted,

*Thomas Berchiolly*

Thomas A. Berchiolly, Pro Se
Reg. No.98369-024
Federal Prison Camp
P.O. Box 1000
Leavenworth, Kansas 66048

-12-



#4 First Contact with medical Staff

BP-S148.055 **INMATE REQUEST TO STAFF** CDFRM
SEP 98
J.S. DEPARTMENT OF JUSTICE                                    FEDERAL BUREAU OF PRISON:

| TO: (Name and Title of Staff Member) | DATE: |
|---|---|
| Dr. Ortiz | 10-22-02 |

| FROM: | REGISTER NO.: |
|---|---|
| Tom Berchiolly | 98369-024 |

| WORK ASSIGNMENT: | UNIT: |
|---|---|
| Orderly | IL-1 |

SUBJECT: (Briefly state your question or concern and the solution you are requesting.
Continue on back, if necessary. Your failure to be specific may result in no action being
taken. If necessary, you will be interviewed in order to successfully respond to your
request.)

Per my conversation with Mr Samalio I need An Appointment
to see PA Jackson so that he may examine A growth
in my forehead. Mr. Samalio seems to think it may be
skin cancer!) Please schedule me for A Appointment as
soon As possible.

    Please reply in writing

(Do not write below this line!)

DISPOSITION:
        Appt given for 11-4-02        10:30



*48,1. Here he puts in writing a lie as to Dr Reed's findings Rev 9-30-03 Public*

PEK 1330.7
09-15-1994
Attachment 1

## FEDERAL CORRECTIONAL INSTITUTION
## PEKIN, ILLINOIS

### INMATE ATTEMPT AT INFORMAL RESOLUTION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

In accordance to Bureau of Prisons' Program Statement 1330.11, Administrative Remedy for Inmates, any inmate attempting to seek formal review of a complaint must first attempt to resolve the complaint informally by presenting it to a staff member. The staff member must attempt to resolve the matter prior to the issuance of a Request for Administrative Remedy (BP-9) to the inmate.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

1. Briefly explain the nature of your complaint. You must include all pertinent details and facts that support your request.

   I have been told on several occasions that I would receive a biopsy on the growth on my face by my right eye to determine if it is some type of skin cancer. I was scheduled for 9-30-03 at 8:30 am to have this done and once again it was not done. Now I am left to worry even longer as to whether I have some type of skin cancer or not.

2. What action do you wish to be taken to resolve this matter? –

   I want a biopsy so that I can know what I am dealing with. I need this growth removed before it gets any larger causing me even greater damage. It is already 10 times larger than when I first brought it to your attention on 10-23-02

Tom Berchiolly 98369-024    IL-1                    9-30-03
Inmate Name & Reg. No.              Unit              Date

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

3. The staff member attempting to resolve the matter will indicate the steps taken and provide to the inmate.

   According to the Clinical Director the General Surgeon evaluated (9/3?) the facial lesion and determined that an excisional biopsy is indicated. Preliminary indication is that its non-cancerous. That However, the lesion will be excised for further classification and diagnosis. This will be scheduled accordingly.

*E*

