UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

THOMAS BERCHIOLLY,
    Plaintiff,

vs.                                                                              04-1318

JOHN ASHCROFT. et al.
    Defendants.

## ORDER

This cause is before the court for consideration of the defendants' pending motion to dismiss and/or motion for summary judgement. [d/e 33]

The plaintiff filed this lawsuit pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388 (1971) alleging that his constitutional rights were violated at the Federal Correctional Institution in Pekin, Illinois. On November 8, 2004, the court conducted a merit review of the complaint and found that the plaintiff had adequately alleged that Defendants Clinical Director Eddie Samalio, Dr. Angel Ortiz, Pharmacist William Gould, Physicians Assistants Robert Jackson and Physicians Assistant Otto Hanson violated his Eighth Amendment rights when they intentionally delayed or interfered with treatment for skin cancer. *See* November 8, 2004 Court Order.

The defendants have filed a motion to dismiss and/or motion for summary judgement. The plaintiff has filed a response.

## FACTS

The following facts are taken from the defendants' statement of undisputed facts, the plaintiff's response and the exhibits presented by the parties.

During the time frame of his complaint, the plaintiff resided at the Federal Correctional Institution in Pekin, Illinois. (Herein FCI Pekin). The plaintiff arrived at this institution on August 24, 1995.

Defendant William Gould is a commissioned officer of the United States Public Health Service who has been assigned to the FCI Pekin. Defendant Samalio says he was the Health Services Administrator at FCI Pekin who was responsible only for the administrative functions of the health care unit including housekeeping, sanitation, maintenance, personnel, budget,

1

procurement and supply functions. Defendant Samalio says he is a foreign medical graduate and has worked as a Physician's Assistant. However, is not authorized to see patients in a clinical role. Defendant Samalio says he did not see the plaintiff in a clinical role, nor did he medically assess the plaintiff or provide treatment to him. (Def. Memo, Samalio Aff.) The plaintiff disagrees with Samalio's claims and says Samalio did in fact examine his skin condition.

On or about October 22, 2002, the plaintiff noticed a growth on his forehead and submitted an inmate request for a medical appointment. An appointment was scheduled and the plaintiff saw Physicians Assistant Jackson on November 6, 2002. Defendant Jackson says he saw an irregular, slightly raised lesion on the plaintiff's forehead. Defendant Jackson's notes also indicate he planned to schedule a biopsy to rule out skin cancer, but the appointment was not made. The defendants claim they do not know why there was a delay in scheduling the appointment. Further, the defendants say the plaintiff did not mention the lesion again until July of 2003.

On July 7, 2003, the plaintiff filed another inmate request expressing concerns about the growth on his face and his cholesterol medication. An appointment was scheduled and the plaintiff was seen in Health Services on July 17, 2003. The plaintiff again raised concerns about the lesion on his forehead as well as other health concerns to Defendant Jackson. Defendant Jackson again wanted to rule out skin cancer and referred the plaintiff to Dr. Ortiz.

Dr. Ortiz met with the plaintiff on July 18, 2003. Dr. Ortiz says he spoke to the plaintiff on this date "about issues related to his knee condition, but Berchiolly also mentioned a skin rash." (Def. Memo, Ortiz Aff., p 2) The doctor ordered Benadryl for the skin rash.

On July 21, 2003, the Utilization Review Committee recommended that the plaintiff undergo arthroscopic surgery for his knee problems.

Dr. Ortiz says on September 2, 2003, he "noted in the medical record a small tumoration on Berchiolly's right forehead, which was pending biopsy." *Id.* The doctor referred the plaintiff to a general surgeon. Again, the defendants offer no explanation for the delay. The Utilization Review Committee approved the biopsy on September 11, 2003.

Dr. Ortiz says he spoke with the plaintiff again on September 22, 2003 and told him the lesion would be biopsied and he would be seen by a general surgeon soon. The doctor also discussed the plaintiff's cholesterol and knee problems. Dr. Ortiz says he had no further contact with the plaintiff since he transferred to another location after this appointment.

The plaintiff was seen by a general surgeon, Dr. Reid, on September 30, 2003. Dr. Reid recommended excision of the right temple nodule and the surgery was conducted on November 18, 2003. The pathology report indicates that the plaintiff did have skin cancer. "The pathology

also noted that the lines of the excision were negative which indicates that the entire cancerous area was removed." *Id.*, p 3.  Dr. Reid indicated that he required no further follow-up with the plaintiff.  The sutures were removed on November 26, 2003 by Defendant Hansen and he noted that the wound was healing well.

On December 8, 2003, the plaintiff submitted an inmate request form complaining of dizziness and expressing concerns over the lesion that was removed from his forehead.  The plaintiff was seen for a medication refill on December 12, 2003 and was seen by a doctor the his dizziness complaint on December 15, 2003.

In January of 2004, the plaintiff was seen by Defendant Hansen with a complaint regarding new lesions on his right temple area.  The plaintiff stated they had increased in size in the last three months, they were tender and occasionally bled when he washed. Defendant Hansen noted a slightly raised lesion that measured approximated 3 by 5 millimeters.  Hansen recommended an outside consultation to rule out skin cancer and a request was submitted that day.

On March 3, 2004, the plaintiff was seen by Dr. Sutherland.  The doctor recommended a cream that is an anti-cancer drug used to treat pre-cancerous and cancerous skin growths.  The plaintiff says the doctor explained the use and potential side effects of the cream.  Dr. Sutherland also asked to see the plaintiff again in six weeks.

The plaintiff saw Defendant Hansen on March 22, 2004 for follow up care and treatment of a skin rash on his back.  Defendant Hanson noted lesions on the bridge of the plaintiff's nose and right eyebrow which is a normal reaction to the skin cream prescribed by Dr. Sutherland. Defendant Hansen says he again saw the plaintiff in the health care unit on April 2, 2004 and counseled him on the side effects of the skin cream and told him he would be scheduled to see a surgeon.

Dr. Sutherland examined the plaintiff again on May 5, 2004.  Dr. Sutherland noted that there were no visible lesions and cancelled the previously recommended surgical excision. Defendant Hansen also saw the plaintiff again the next month, on June 23, 2004, in the Chronic Care Unit and noted that there were no lesions on the plaintiff's face at that time.  The plaintiff disagrees with Dr. Sutherland and states that "[a]t the time plaintiff's face displayed several lesions." (Plain. Resp, p. 8).  The plaintiff filed this complaint on September 15, 2004.

Defendant Hansen says the next time he saw the plaintiff in regards to any complaints about skin lesions was on September 30, 2004.  The plaintiff complained of lesions on his face and penis, kidney stones and bumps to his scalp.  Defendant Hansen noted "no significant lesions to his face.." (Def. Memo, Hansen Aff, p.3).   The plaintiff disagrees with this statement. Defendant Hansen did note a lesion on the plaintiff's penis.  Therefore, the plaintiff was treated

3

for a urinary tract infection, genital warts and skin lesions.

Defendant Hansen says he saw the plaintiff again on October 4, 2004 for follow up. The plaintiff stated there was an improvement in his urinary tract infection. Defendant Hansen's assessment was the plaintiff suffered from an inflamation of the prostrate, kidney stones and noted that there was a need to rule out Lupus. The defendant prescribed medication and ordered laboratory tests.

Dr. Ortiz states that even if there were delays in treatment for the lesions on the plaintiff's face, it did not have any impact on the plaintiff's condition.

> Squamous cell carcinoma is the second most common form of skin cancer. While it can eventually penetrate to underlying tissues, it is rare that it spreads to distant tissues and organs.......There is no indication that the squamous cell carcinoma found on Berchiolly's forehead spread to any other areas. The removal was successful as evidenced by the pathology report. (Def. Memo, Ortiz Aff, p. 4)

Dr. Ortiz further states that any dizziness complained of by the plaintiff could not be caused by squamous cell carcinoma. The plaintiff in response to the dispositive motion "stipulates to the dizziness not being related to the carcinoma." (Plain Resp, p. 6) Lastly, Dr. Ortiz states that the "scar complained of by Berchiolly is small and is an expected result of surgical excision." *Id.*

Lastly, the defendants note that the plaintiff was seen in the Health Care Unit on a variety of occasions for a variety of ailments and received treatment. The plaintiff was seen four times in November and December of 2002. The plaintiff was also seen by health care professionals 22 times in 2003 and 24 times in 2004 before he was transferred to another institution in November of 2004.

## LEGAL STANDARD

The defendants have filed a motion to dismiss and/or motion for summary judgement. Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of complaints that state no actionable claim. It is well established that pro se complaints are to be liberally construed. *Haines v. Kerner*, 404 U.S. 519 (1972), *reh'g denied,* 405 U.S. 948 (1972). *See also Tarkowski v. Robert Bartlett Realty Co.*, 644 F.2d 1204 (7th Cir. 1980). They can be dismissed for failure to state a claim only if it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Haines*, 404 U.S. at 521. For the purposes of a motion to dismiss, the court takes the allegations in the complaint as true, viewing all facts and reasonable inferences drawn from those facts in the light most favorable to the

Plaintiff. *Bethlehem Steel Corp. v. Bush*, 918 F.2d 1323, 1326 (7th Cir. 1990).

The entry of summary judgment on the other hand is proper only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute is genuine only if a reasonable jury could find for the nonmoving party. *Id.*

A party moving for summary judgment initially has the burden of showing the absence of any genuine dispute of material fact based on the evidence. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 153 (1970); *Schroeder v. Barth, Inc.,* 969 F.2d 421, 423 (7th Cir. 1992). A nonmoving party cannot rest on its pleadings, but must demonstrate that there is admissible evidence that will support its position*. Tolle v. Carroll Touch, Inc.,* 23 F.3d 174, 178 (7th Cir. 1994). The evidence and all reasonable inferences drawn therefrom are viewed in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255. Nonetheless, "(s)ummary judgement is not a discretionary remedy. If the plaintiff lacks enough evidence, summary judgement must be granted." *Jones v. Johnson*, 26 F.3d 727, 728 (7th Cir. 1994).

## ANALYSIS

A. DEFENDANT WILLIAM GOULD.

The defendants argue that the court should dismiss the claims against Defendant William Gould because the plaintiff has failed to articulate a constitutional violation involving this defendant and because this defendant has absolute immunity from a *Bivens* lawsuit.

First, the defendants argue that the only claim against Defendant Gould is insufficient to state a violation of the plaintiff's constitutional rights. The parties agree that Gould is pharmacist and is a commissioned officer of the United States Public Health Service. The plaintiff alleges that in July of 2003, Defendant Dr. Ortiz informed Defendant Gould that the lesion on the plaintiff's face appeared to be dry skin although the plaintiff was concerned it was cancerous. Dr. Ortiz also noted that Defendant Jackson also thought the lesion might be skin cancer. The plaintiff alleges that Defendant Gould then laughed and remarked that Jackson had a tendency to overact. " With barely any examination, Gould concluded that the lesion was only dry skin" and told the plaintiff to apply some lotion to the area. (Comp, p. 6)

The defendants point out that the plaintiff was under the care of Physicians Assistant Jackson and Dr. Ortiz. The plaintiff was a pharmacist and had no authority to override either defendants' medical opinion. The defendants further state even if the plaintiff could somehow prove that Gould did override the doctor's diagnosis, a one-time mistaken diagnosis is not

5

evidence of deliberate indifference. *Estelle v. Gamble,* 429 U.S. 97, 106 (1976), *Steele v Choi,* 82 F.3d 175, 178 (7th Cir. 1996)

Second, the defendants argue that since Defendant Gould is an officer of the Public Health Service, a Federal Tort Claim Act is the exclusive remedy for any action against him. *See* 42 U.S.C. §233(a).

The plaintiff does not respond to either argument presented by the defendants. The motion to dismiss Defendant Gould is granted.

B. DEFENDANT EDDIE SAMALIO

The defendants argue that the plaintiff has failed to demonstrate that Defendant Samalio violated his Eighth Amendment rights. The defendants argue that the Defendant Samalio was an administrator, not a health care provider. The defendants argue that Defendant Samalio was not responsible for the plaintiff's medical care and instead relied on the opinion of the appropriate medical staff for the plaintiff's care.

However, the description of Defendant Samalio's role is somewhat ambiguous. The defendant claims he is only an administrator, but admits he is a medical administrator and has medical training. The defendant claims Defendant Samalio was not involved in the plaintiff's medical treatment, but the plaintiff says Defendant Samalio examined him. Further, Defendant Physician's Assistant Hansen states that he conferred with Defendant Samalio concerning the plaintiff's medical condition. (Def. Memo, Hansen Aff, p.3). It is also not clear if Samalio was in some way responsible for scheduling medical appointments or treatment.

Due to this ambiguity, the court cannot say that this defendant had no responsibility for plaintiff's medical care.

C. DELIBERATE INDIFFERENCE TO A SERIOUS MEDICAL CONDITION.

The plaintiff claims the defendants violated his Eighth Amendment rights when they failed to treat his condition for one year which resulted in permanent disfigurement and pain. The plaintiff must pass both an objective and a subjective test in order to establish that the lack of appropriate medical care violated the Eighth Amendment. *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981); *Wilson v. Seiter,* 501 U.S. 294, 297 (1991). The plaintiff must first demonstrate that the alleged deprivation was sufficiently serious. *Id.* The plaintiff must also show that the defendants acted with deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994).

"[A] finding of deliberate indifference requires evidence that the official was aware of the risk and consciously disregarded it nonetheless." *Mathis v. Fairman*, 120 F.3d 88, 91 (7th Cir.

1997)(citing *Farmer* at 840-42). Inadequate medical treatment due to negligence or even gross negligence does not support an Eighth Amendment violation. *Shockley v Jones*, 823 F.3d 1068, 1072 (7th Cir. 1987). In addition, inmates are not entitled to a specific type of treatment, or even the best care, only reasonable measures to prevent a substantial risk of serious harm. *Forbes v. Edgar,* 112 F.3d, 262, 267 (7th Cir. 1997).

"[P]roof of deliberate indifference may be found where a prison official intentionally denies or delays access to medical care or intentionally interferes with the treatment once prescribed." *Jones v. Natesha* ,151 F.Supp.2d 938, 945 (N.D. Ill. 2001) *citing Ford v. Page,* 2001 WL 456427 at 6(N.D.Ill. April 27, 2001). A delay in scheduling an appointment for medical treatment may constitute deliberate indifference. *Jones v. Simek*, 193 F.3d 485, 490-491 (7th Cir. 1999) However, "an inmate who complains that delay in medical treatment rose to constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed." *Langston v Peters*, 100 F.3d 1235, 1240 (7th Cir. 1996).

The most disturbing fact before this court is the delay between the time the plaintiff first pointed out the lesion on his forehead in November of 2002 until the time the plaintiff received treatment in September of 2003. While certainly not commendable, the plaintiff has not shown that his constitutional rights were violated.

There is no evidence beyond the plaintiff's bald assertions that the cause of this delay was deliberate indifference to his condition. The plaintiff was repeatedly seen by medical professionals during this time period for a variety of ailments. The plaintiff does not contend that he was denied treatment for these conditions including arthroscopic knee surgery. The plaintiff apparently does not deny that he also did not bring up the lesion on his face during these visits and instead concentrated on his other medical problems.

Based on the record before the court, it appears the delay was the result of negligence on the part of the dependants. Both the Supreme Court and the Court of Appeals for the Seventh Circuit have made clear that acts of negligence do not constitute cruel and unusual punishment, even if they are repeated several times. *See Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976); *Sellers v. Henman*, 41 F.3d 1100 (7th Cir.1994) Deliberate indifference means more than inadvertent error, negligence or even gross negligence. *Vance v. Peters*, 97 F.3d 987, 992 (7th Cir.1996); *see also Snipes v. De Tella*, 95 F.3d 586, 590-91 (7th Cir.1996).

In addition, there is no "verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment..." *Langston*, 100 F.3d at 1240. The plaintiff claims he was permanently disfigured, but the medical record tells a different story. On May 5, 2004, Dr. Sutherland noted that there were no visible lesions and cancelled the previously recommended surgical excision. The court notes that Dr. Sutherland is not a defendant in this

case and is not employed by the Illinois Department of Corrections. Defendant Hansen saw the plaintiff on June 23, 2004 and noted that there were no lesions on the plaintiff's face. Defendant Hansen saw the plaintiff again on September 30, 2004 and despite the plaintiff's complaints the defendant noted "no significant lesions to his face." (Def. Memo, Hansen Aff, p.3). Defendant Hansen did treat the plaintiff for a variety of other ailments. Lastly, Dr. Ortiz states there is no evidence the cancer spread and the "scar complained of by Berchiolly is small and is an expected result of surgical excision." *Id.*

The plaintiff has submitted grainy copies of photographs of his face in an attempt to show the lesion. The plaintiff has failed to say when the photographs were taken and the photographs do not clearly show any disfigurement. The motion for summary judgement as to the remaining claims is granted.

D. OFFICIAL CAPACITY.

For clarification of the record, the court notes that the plaintiff's complaint states his intention to sue the defendants in their individual and official capacities. However, a *Bivens* action may only be maintained against a federal official in his or her individual capacity; it cannot be maintained against the United States or a federal agency. *See F.D.I.C. v. Meyer*, 510 U.S. 471, 484-86 (1994); see also *Cross v. Fiscus*, 830 F.2d 755, 756 (7th Cir.1987) (finding that Bivens only authorizes suits against federal officials in their individual capacities)  Thus, to the extent the plaintiff is asserting *Bivens* claim against the name defendants in their official capacities, the claims must be dismissed.

**IT IS THEREFORE ORDERED that:**

**1) The defendants' motion to dismiss Defendant William Gould is granted. [d/e 33]**

**2) The defendants' motion for summary judgement as to all remaining defendants and claims is granted pursuant to Fed. R. Civ. P. 56. [d/e 33]  The clerk of the court is directed to enter judgment in favor of the remaining defendants (Samalio, Ortiz, Hansen and Jackson) and against the plaintiff.  All pending motions are denied as moot, and this case is terminated, with the parties to bear their own costs.**

**3) If the plaintiff wishes to appeal this dismissal, he may file a notice of appeal with this court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal *in forma pauperis* should set forth the issues the plaintiff plans to present on appeal. *See* Fed. R. App. P. 24(a)(1)(C).  If the plaintiff does choose to appeal, he will be liable for the $455.00 appellate filing fee irrespective of the outcome of the appeal.  Furthermore, if the appeal is found to be non-meritorious, the plaintiff may also accumulate another strike under 28 U.S.C.**

8

**1915(g).**

**4) The agency having custody of the plaintiff is directed to remit the docketing fee of $150.00 from the plaintiff's prison trust fund account if such funds are available. If the plaintiff does not have $150.00 in his trust fund account, the agency must send 20 percent of the current balance, or the average balance during the past six months, whichever amount is higher; thereafter, the agency shall begin forwarding monthly payments from the plaintiff's trust fund account to the clerk of court each time the plaintiff's account exceeds $10.00 until the statutory fee of $150.00 is paid in its entirety. The filing fee collected shall not exceed the statutory filing fee of $150.00.**

**5) The plaintiff must notify the clerk of the court of a change of address and phone number within seven days of such a change. Release from incarceration does not relieve the plaintiff of his obligation to pay the filing fee in full.**

**6) The clerk is directed to mail a copy of this order to the plaintiff's place of confinement, to the attention of the Trust Fund Office.**

Entered this _____ day of March, 2007.

                                            **s/ Harold A. Baker**
                             _____
                                            HAROLD A. BAKER
                                   UNITED STATES DISTRICT JUDGE